Hemmingsen, Administrator, Respondent, vs. Chicago & Northwestern Railway Company, Appellant.

*January 9—January 28, 1908.*

*Railroads: Negligence: Injuries to employees: Contributory negligence: Assumption of risk: Notice: Trial: Special verdict: Requested questions.*

1. In an action against a railroad company for the death of an employee, the evidence, stated in the opinion, is *held* to require the submission to the jury of the question of the contributory negligence of the deceased.

2. In an action against a railroad company for the death of an employee, a notice served on the deceased before the injury to the effect that there were obstructions dangerously close to the track and that he was required to look out for them, there being no claim that any notice was given the deceased of the particular dangerous condition in question, is *held* insufficient as matter of law to charge deceased with assumption of the risk or of negligence in not discovering the danger.

3. It is not error to refuse to submit a requested question as part of a special verdict where the special verdict returned amply included the idea covered by the question asked to be submitted.

APPEAL from a judgment of the circuit court for Oconto county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action was brought to recover for the pecuniary injury resulting to the widow from the death of plaintiff's intestate, employed by defendant as brakeman. The negligence charged is in the construction and maintenance of one of its tracks so near a certain platform as to be "unreasonably and unnecessarily hazardous and dangerous." The jury returned the following verdict:

"(1) Was the platform between which and the car the deceased, George F. Parks, was crushed, so close to the side track as to render the place unnecessarily dangerous to the defendant's employees in the performance of their duties at that time? *A.* Yes.

"(2) If you should answer the first question 'Yes,' then answer this: Ought a person of ordinary intelligence and prudence and experience as the defendant was, and similarly situated and engaged, to have reasonably anticipated that some injury would result to an employee from the proximity of said track to said platform, while such employee was in the performance of his duty? *A.* Yes.

"(3) If you answer the first question 'Yes,' then answer this: Ought a person of ordinary intelligence and prudence, and similarly situated, experienced, and engaged as was deceased, to have observed the nearness of the platform to the track, and comprehended the danger resulting from going between the moving cars and the platform? *A.* No.

"(4) Did any want of ordinary care on the part of the

deceased, Mr. Parks, proximately contribute to his injury which caused his death?   A. No.

"(5) At what amount do you assess the plaintiff's damages?   A. $5,000."

Defendant moved for judgment notwithstanding the verdict, that answers to questions 3 and 4 of the verdict be changed, and for a new trial, which were denied and judgment given for plaintiff on the verdict, from which this appeal was taken.

*Edward M. Hyzer,* for the appellant.

For the respondent there was a brief by *Wigman, Martin & Martin,* counsel, and *Gill & Chase,* attorneys, and oral argument by *James J. Gill* and *P. H. Martin.*

KERWIN, J.   1. The principal contention for reversal is that upon the undisputed evidence the deceased, George F. Parks, was guilty of contributory negligence, and therefore the court should have changed the answers to questions 3 and 4 from "No" to "Yes."   On the day of the fatal injury deceased was employed in switching cars on side-tracks near the platform at the plant of the Falls Manufacturing Company at Oconto Falls in this state.   While thus engaged he was crushed between the platform and a moving car and died from the effects of the injuries received.   The platform was about sixty-four feet long and extended east and west along the south side of a warehouse.   There were three switch tracks south of this platform, numbered 3, 4, and 5, connecting with a three-throw switch located about six feet west of the west end of the platform and a little south of the south line of the platform extended.   Track No. 3 was nearest to and about parallel with the platform, but varied in distance from the platform at different points from eleven inches to about two feet or more from the side of a box car on the track to the platform.   The platform also varied in height and was old, uneven in height, and irregular of outline.

Near the west end it was about three feet ten inches and at the east end about four feet six inches above the top of the rail, while in or near the middle it was much higher. The evidence further tends to show that said track No. 3 had been used to place cars that were taken out and had not been used for spotting or switching much; that neither deceased nor any of the brakemen had been seen doing any work between the platform and side of a passing car on this track before the injury occurred. The train crew engaged at the time of injury consisted of the conductor, engineer, fireman, and two brakemen. There were three cars attached to the engine. One of these had been switched onto one of the tracks south of track No. 3, and the movement in thus switching left the engine and two cars attached west of the switch about half a car length. The next movement was for the purpose of placing the remaining two cars on track No. 3, which was nearest to the platform. The deceased threw the switch, crossed to the south side of the cars, gave the back-up signal, and walked eastward on the southerly side of track No. 3, while the engine and cars backed in upon the track. At about this time the other brakeman called to deceased saying: "All right, George, cut it off and I will catch it." Upon receiving this order deceased rushed across to the platform in front of the cars and stepped between the rail and the platform at a point near the middle or west of the middle of the platform. The car passed until a projecting handhold extending four inches beyond the side door of the car caught him and rolled him about fifteen feet between the platform and the car, causing the fatal injury.

There is no direct evidence that deceased knew the platform was dangerously near the track, nor that he had ever gone between the platform and a moving car at this point before the time of injury. It is true he was an experienced brakeman, and it does not appear why he passed from the south side of the track in front of the backing cars and went

between the cars and the platform. The question whether he was guilty of contributory negligence as matter of law is not free from doubt and difficulty. In an opinion of the trial court in the record, on motion by defendant for a directed verdict the learned trial judge in denying the motion seems to rest his opinion principally upon the fact that deceased never had his attention called to the proximity of the platform to the cars when upon track No. 3, and that the evidence was not sufficient to charge deceased as matter of law with knowledge of the dangerous proximity of the cars to the platform when passing by it. It is said that there was no occasion for deceased to stand between the platform and the moving car. True, it does not appear what his purpose was in so doing. But obviously he had some purpose connected with his duties. If he knew the place was dangerous, doubtless he would not have gone there. The question is, Should he have known it? In view of the fact that there is no evidence that he or others had ever been called upon before to go between the platform and cars at this point, and the fact that the track was not used much for spotting cars, he doubtless, in the hasty performance of his work, failed to properly estimate the distance at the particular point where he entered. Counsel for appellant argues that deceased crossed over to the platform, leaned against it, and waited for the car to back up, and that he was then in a position to know the danger, but that he stood there intending to uncouple the cars with the pin lifter when the engine reached him, and that he assumed an unsafe place, when he could have safely uncoupled on the south side. The engineer was on the north side, and the evidence shows it was preferable to give the signal on that side. He doubtless went there to give the signal and uncouple the cars, and unless he knew or ought to have known the danger he was not guilty of negligence. There is evidence also that when he rushed across to the platform the cars were backing opposite him. But we think that

whether he knew or ought to have known of the danger was for the jury. It is at least inferable that he had some reason for going to the platform which he regarded sufficient in the discharge of his duties. He was on the ground, and in the best position to judge of the necessity of going where he did at the time of the injury. It is practically conceded by appellant that he did not regard the place unsafe when he went there. Nor do we think the evidence is clear that he ought to have discovered the danger before he was struck. There is evidence that he went across to the platform in great haste, "rushed across" immediately in front of the cars as they were being pushed onto the track. Now it may well be that he was caught before he had time to know the danger or extricate himself from it, if he did discover it, while in the perilous position.

Point is made by counsel for appellant that notice was served on deceased before the injury to the effect that there were obstructions dangerously close to the track and that he was required to look out for them. There is no claim, however, that any notice was given deceased of the particular dangerous condition in question, and we do not think as matter of law such notice could have the effect of charging him with the assumption of risk or of negligence in not finding it. *Leque v. Madison G. & E. Co.* 133 Wis. 547, 113 N. W. 946. We have examined the cases cited by counsel for appellant and cannot see that they are controlling. A case more in point than any cited is *Dorsey v. Phillips & C. C. Co.* 42 Wis. 583. There the facts were very similar to those in the case before us, and this court held that the questions of assumption of risk and contributory negligence were for the jury. See, also, *Sweet v. Mich. Cent. R. Co.* 87 Mich. 559, 49 N. W. 882; *Hocking v. Windsor S. Co.* 125 Wis. 575, 104 N. W. 705; *Chicago & I. R. Co. v. Russell,* 91 Ill. 298; *Kearns v. C., M. & St. P. R. Co.* 66 Iowa, 599, 24 N. W. 231. After a careful examination of the evidence we are

inclined to agree with the trial judge that the case was properly for the jury.

2. Error is assigned because the court refused to submit to the jury as part of the special verdict the following:

"Could the deceased, by the exercise of ordinary care, have observed and discovered the platform and the track, and the precise relation of the platform to the track and the moving cars?"

There was no error in this refusal in view of the verdict submitted. The verdict returned amply included the idea covered by the question asked to be submitted. The issuable facts were covered by the verdict, and this is all that is required. We think the case was fairly tried and no reversible error committed. Therefore the judgment should be affirmed.

*By the Court.*—The judgment is affirmed