MAURICE E. SULLIVAN, APPELLEE, v. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.

FILED DECEMBER 21, 1934. No. 28831.

*Wymer Dressler, Robert D. Neely* and *Hugo J. Lutz,* for appellant.

*Brome, Thomas & McGuire* and *G. H. Seig, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and DAY, JJ., and ELDRED, District Judge.

ROSE, J.

This is an action to recover damages in the sum of $45,000 for alleged negligence resulting in personal injuries. Defendant is a common carrier operating a railroad. Plaintiff was a brakeman and a member of a train crew running a regular freight train for defendant out of Boone, Iowa, westward into Nebraska. Plaintiff, while engaged in the duties of his employment, walking toward a hydrant for a supply of water for the train crew, with a jug in one hand and a lantern in the other, about 1:30 o'clock in the morning, August 11, 1931, tripped on and fell from a platform with a floor of wooden planks at Boone, Iowa, onto a steel rail of defendant's stock-loading track, and was severely injured.

Employer and employee were engaged in interstate commerce at the time of the accident. The gist of the negligence pleaded in the petition, or the alleged defect due to negligence, was the maintenance of the platform with one end of a plank an inch or two higher than the general level of the floor. The negligence charged was put in issue by formal pleadings.

Upon a trial of the cause the jury rendered a verdict in favor of plaintiff for $35,000. From a judgment therefor defendant appealed.

It was argued by defendant that plaintiff did not make a *prima facie* case and that the district court erred in overruling a motion for a nonsuit. This presents the controlling question.

The action was brought under the federal employers' liability act, making an interstate carrier liable to an employee for an injury, "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." U. S. Comp. St. 1916, sec. 8657, 45 U. S. C. A., ch. 2, sec. 51. The platform was part of the equipment or works used for railway purposes. *Missouri P. R. Co. v. Aeby,* 275 U. S. 426. The platform was located between stockyard chutes and the stock-loading track. The floor was composed of wooden planks laid lengthwise, end to end, parallel with the railway. The planks generally were 16 feet long, 10 inches wide and 3 inches thick. The platform was 8 planks wide and the floor was on a level with the doors of freight cars, or perhaps 4 feet higher than the rail upon which plaintiff fell.

According to plaintiff's version of the facts, as told on the witness-stand, he was a rear brakeman; left the caboose of his train; crossed several switch tracks; went upon the platform; walked toward the water hydrant and, when within a few feet of it, struck a toe on some

obstruction near the center of the platform—something above the level of the floor; lost his balance; took two or three stumbling steps without restoring his equilibrium; fell off the platform and struck his back on a steel rail four or five feet below; never used the platform in the daytime; did not know of the defect; next saw the place in November following the accident; identified the spot by the surroundings; found the elevation of the end of the plank above the general level of the platform to be a "little over an inch," or "better than an inch," or "an inch or better"—estimates without actual measurement; platform used for loading and unloading stock and for a walk.

The wife of plaintiff was a witness who visited the scene of the accident two or three days after it occurred; testified she identified the place where plaintiff fell by fragments of the jug 9 or 10 feet from the hydrant; observed the end of a plank a little "better than an inch" above the other planks; nail in one corner near the raised end but not in the other corner; unnailed corner higher; no other obstruction there; measured the difference in elevation with a finger.

Pictures introduced in evidence by plaintiff indicate a substantial platform for railway purposes with a slight elevation of the end of the plank described.

In connection with the law applicable to the controversy, the testimony outlined and all proper inferences of fact deducible in plaintiff's favor from competent evidence on both sides will be accepted as verity for the purpose of determining whether a question for the jury was presented by the record of the trial.

In the interpretation and administration of the federal employers' liability act, the opinions of the supreme court of the United States are binding on state courts when applicable to the issues under consideration therein. It is not the duty of a common carrier engaged in interstate commerce by means of a railway to maintain station platforms that are absolutely safe for employees. There

is no guaranty of the safety of employees at such places. Construction of a particular type of platform, or maintenance of it in the safest possible condition, is not required. The measure of duty to employees is reasonable care, having regard to circumstances. The obligation of an interstate railway company to a passenger at a station platform is greater than the duty to employees who use the platform in the performance of their duties and thus acquire knowledge equal to that of their employer. These principles, in substance, were recently announced by the supreme court of the United States. *Missouri P. R. Co. v. Aeby,* 275 U. S. 426.

The defect upon which plaintiff relies to show negligence was not latent but obvious. *Campbell v. Chicago, R. I. & P. R. Co.,* 120 Neb. 499. In an action by an employee against his employer, a railway company, under the federal employers' liability act, there is generally no liability for injuries from dangers that are obvious. 20 R. C. L. 64, sec. 57; *Campbell v. Chicago, R. I. & P. R. Co.,* 120 Neb. 499; *Hogan v. Metropolitan Building Co.,* 120 Wash. 82; *Wheelock v. Freiwald,* 66 Fed. (2d) 694; *Northwestern P. R. Co. v. Bobo,* 290 U. S. 499; *Delaware, L. & W. R. Co. v. Koske,* 279 U. S. 7; *Toledo, St. L. & W. R. Co. v. Allen,* 276 U. S. 165.

The measure of a railway company's duty to employees being reasonable care, having regard to circumstances, as already stated, is no greater than that of a municipality to pedestrians on sidewalks. It is common knowledge that sidewalks in cities are affected by heat, cold, moisture and wear and that points on the surface vary in elevation from the general level, regardless of the materials used in construction. Differences of two inches or less, if obvious by the exercise of ordinary care, do not necessarily evidence actionable negligence. The fact that a person fell on a step in the entrance to a building to which he had been invited does not of itself raise a presumption that the step was negligently maintained, the defect being observable in the exercise of ordinary care. Variance of

an inch and three-fourths in the level of a step in the public entrance to a building is not of itself evidence of actionable negligence in the maintenance of the step. *Thompson v. Young Men's Christian Ass'n*, 122 Neb. 843. Evidence of a difference of one-eighth of an inch, or a little more, in the elevation of two parts of a cracked step, where a person fell, in the public entrance to an office building, was held insufficient to prove actionable negligence in a suit for damages against the owner of the building. *Wendell v. Roberts*, 125 Neb. 619. Courts of other states have spoken on this subject as indicated by the following excerpts from reported cases:

"An elevation of the edge of a cement block in a sidewalk of 1⅜ inches, held, as a matter of law, not to render the walk unsafe." *Denver v. Burrows*, 76 Colo. 17.

"A grating which projects two inches or less above a sidewalk is not such a defect as to violate the duty of a municipality to keep its streets and walks in a condition of reasonable safety." *Northrup v. City of Pontiac*, 159 Mich. 250. See, also, *Cornell v. City of Ypsilanti*, 212 Mich. 540.

"A slight depression in one block and an elevation in the adjoining block of a cement sidewalk, the difference in level being about one and one-quarter inches, was, as a matter of law, not an actionable defect. *Kleiner v. City of Madison*, 104 Wis. 339, followed." *Van der Blomen v. Milwaukee*, 166 Wis. 168. See, also, *Grass v. Seattle*, 100 Wash. 542.

"A variation of one and one-half inches between the elevation of adjoining ends of flagstones in a street crossing, is not evidence of negligence on the part of the municipality so as to make the latter liable for injuries to a pedestrian who falls at the point of such obstruction." *Newell v. Pittsburgh*, 279 Pa. St. 202.

The cited cases are analogous in principle to the case at bar. The testimony of plaintiff himself shows that he was familiar with his surroundings at the place of the accident and with the dangers in the railroad yards

at Boone. He cleaned and lighted his lantern. With the light from it he crossed many switch tracks where the rails were about six inches higher than the roadbed. He was 44 years of age; had been in the employ of defendant as brakeman or conductor for 16 years; had taken the same route for water at night, with jug and lantern, without injury, perhaps 50 times. While he said the lantern did not throw light directly downward from the flame, there is nothing to indicate it could not have been so used as to throw light on planks in front of him. The senses and powers of perception with which nature endowed him for his own safety and the lantern furnished by his employer were equipments on a dark night for the performance of his duties. His own senses, the raised end of the plank and the proper use of the lantern should have given warning. His knowledge of danger under the circumstances should have been equal to that of his employer.

After two hearings and much deliberation it is the unanimous opinion of the supreme court that plaintiff did not make a case under the federal employers' liability act. In this view of the law and the facts, the trial court erred in submitting to the jury the issue of defendant's negligence. The judgment below is therefore reversed and the cause remanded for further proceedings.

REVERSED.