JAMES HARRISON DONALD, APPELLANT, V. EDWIN B. HELLER, APPELLEE.

10 N. W. (2d) 447

FILED JULY 9, 1943. No. 31616.

Stewart, Stewart & Whitworth, for appellant.

Chambers, Holland & Locke, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

Plaintiff brought this action to recover damages for personal injuries sustained by him when a motorcycle on which he was riding collided with an automobile driven by the defendant. Jury was waived, the case was tried to the court, and the trial court entered judgment dismissing the plaintiff's petition. Motion for a new trial was overruled. Plaintiff appeals.

Plaintiff's petition alleged the factual situation with reference to the accident, the injuries received, damages sustained, and several separate charges of negligence against the defendant, invoked the doctrine of the last clear chance, and prayed for damages. Defendant's answer admitted the collision, denied negligence on his part, alleged contributory negligence on the part of plaintiff which constituted the proximate cause of the accident and resulting damages, set forth separate charges of negligence on the part of the plaintiff, and prayed for dismissal of the plaintiff's petition. The reply was a general denial.

Exhibits 10 and 11 appearing in the record are maps drawn to scale, showing the respective distances and the state highway signs with reference to speed, slowing down, curves, etc. U. S. highway No. 6 is an arterial highway. The plaintiff proceeded to the west on the route that bypasses the city of Lincoln, over a viaduct. From the top of this viaduct there is a grade of 15 feet, and to the west thereof for 300 feet it is level to the center line where Seventieth street intersects highway No. 6. The highway is a paved slab 20 feet in width. Seventieth street is paved and 28 feet in width. In the vicinity of Seventieth street the right of way for road construction is 120 feet; that is, 60 feet on each side of the highway, which is separate and distinct from the paved portions of the highway. The intersection is within the corporate limits of the city of Lincoln. The collision occurred in the intersection of U. S. highway No. 6 and Seventieth street. The Pontiac car driven by the defendant is 16 feet, 9 inches long; the Harley Davidson two-cylinder motorcycle driven by the plaintiff is 3 feet, one inch wide, and 7 feet, 8 inches long.

The plaintiff, a young man 22 years of age, was proceeding on his 1938 model motorcycle, which was in good condition and with good brakes, en route from Ames, Iowa, to Oregon, where he had employment. The accident occurred at 8 o'clock in the evening of June 18, 1940. Plaintiff testified in substance as follows: Prior to and from the time he entered highway No. 6 to the place of the accident he obeyed all highway traffic signs. He slowed down at the junction which divided the city route of highway No. 6 and the route which by-passes the city of Lincoln, and as he proceeded over the overpass he increased his speed to 45 or 50 miles per hour. As he left the overpass he speeded up a little and again decreased his speed when he was 300 to 400 feet distant from the Seventieth street intersection, by retarding the throttle and shutting off the gas. He observed no other speed signs. As he came off the overpass he saw an automobile (defendant's car) to the north of the highway on Seventieth street. This car was about 25 or 30 feet from the north edge of the straight paved portion of the highway and was proceeding south at a rate of speed not to exceed five miles per hour. The plaintiff was traveling 45 miles per hour at the time he retarded the throttle, turned off the gas and sounded his horn, about 300 feet east of the intersection of the highway and Seventieth street. The defendant's car continued to the north edge of the highway, and just before reaching the edge it slowed down nearly to a stop. Plaintiff had again sounded his horn when he was 200 feet east of the intersection, at which time defendant's car was within six or eight feet of the north edge of the highway. Plaintiff's speed was then a little more than 40 miles per hour. Defendant's car continued to the highway at a speed of about two or three miles an hour. Reaching the north edge of the highway it picked up a little speed, and as he approached the center he seemed to slow down again. When the front end of defendant's car was near the center of the intersection and appeared to have slowed down, the plaintiff was from 125 to 150 feet east of the intersection.

As the defendant approached the center of the highway, the plaintiff crossed it to the left or south side, and, as he turned, he began to apply his brakes. The north side of the highway at the intersection was then blocked by the defendant's car; the south side was clear. The plaintiff, in order to turn from the north to the south side, would require a distance of 25 or 30 feet. After reaching the south side of the highway, the plaintiff put on his brakes with more force; his speed was 40 miles per hour, and after plaintiff was on the south side of the highway the defendant's car seemed to pick up speed, and that is when the plaintiff applied his brakes with still more force. After he had proceeded a short distance, the wheel on his motorcycle, reacting to the brakes, began to skid on the pavement, and the brakes locked the wheels, after which the motorcycle skidded for a ways, and the rear end and rear wheel began to turn to the north and to skid in that direction. Just before the collision, the rear wheel had gone on around until the motorcycle was just across from and perpendicular to the line of highway No. 6. It then proceeded on down and skidded on its side the last few feet before the collision, and, as he was coming down to this point, plaintiff turned off to the left or south. The defendant's car picked up some speed, and, as the plaintiff testified, it "seemed to jump right over there in front of me." It was then apparent to the plaintiff that the south side of the intersection was blocked. The motorcycle skidded for 50 feet, and, tilted on its side, went a distance of 15 to 18 feet. The point of impact was three or four feet west of the center line of Seventieth street, and six or eight feet south of the south line of highway No. 6. At the time of the collision, the speed of the motorcycle was 20 to 25 miles per hour; the speed of the defendant's car was placed by the plaintiff at from 10 to 15 miles per hour. Plaintiff testified the motorcycle could be stopped on the level in about the distance of a half-block when going about 40 miles an hour, and "probably half again as far" descending the overpass.

The substance of plaintiff's testimony on cross-examina-

tion is that the defendant's car had entered the intersection and was approaching the center line of highway No. 6 when the motorcycle was from 100 to 125 feet east of the intersection. The plaintiff had not applied his brakes at that time. The defendant's car did not stop from the time plaintiff first saw it. Plaintiff was probably 90 to 100 feet from the intersection when he applied his brakes and was on the south side of highway No. 6. The defendant's car was approaching and was at or near the center of the intersection at that time. The front end of the car may have been on the center line, or a foot or two south thereof, when the plaintiff was 90 feet east of the intersection. The plaintiff's brakes were applied with enough force to burn rubber for a distance of 50 feet, and during the last 90 feet he was doing everything he could to stop his motorcycle, but was unable to stop in that distance. The motorcycle finally pulled over on its side and started to slide on the paving for about six yards from the point of impact, in addition to the 50 feet that it skidded. At the time of the impact the left front wheel of defendant's car was six or seven feet south of the south edge or paved portion of highway No. 6 and three or four feet west of the center line of Seventieth street. The accident happened in the southwest corner of the intersection, and when the plaintiff hit the defendant's car he bounded a foot or two back to the east. After the impact the defendant's car traveled two or three feet before it stopped. Plaintiff testified that, going at 40 miles an hour, a motorcycle would travel 65 feet per second.

Defendant's testimony discloses the following: He was driving a 1940 Pontiac automobile. He stopped at the stop sign which is west of Seventieth street, looked in both directions and saw no motor vehicle. He first observed the plaintiff's motorcycle when the front end of his car was about four feet north of the center line of highway No. 6. The motorcycle was approximately 175 feet east, on the north side of the highway. The defendant endeavored to speed up his car to clear the highway and get out of the path of the motorcycle. He shifted into second gear and

stepped on the gas, and as soon as he was across, had cleared the highway, and observed that he was clear past the intersection, his speed diminished, and when the motorcycle struck his car it stopped immediately. About the center of the right side of the motorcycle came in contact with the left front wheel of the defendant's car. The motorcycle was then headed southwest. The rear of the defendant's car was south of the center line of the highway when the collision occurred. The point of impact, as given by defendant, was two feet to the south edge of the pavement of the highway. For the last 15 feet traveled, the plaintiff had no control over his motorcycle. He was trying to stop the motorcycle and was coming at such speed that he lost control of it; its speed was not decreasing.

The defendant testified further: "He (plaintiff) had an idea I was stopping and I thought I was clearing this road for him, giving him his right side on this road, * * * and I tried to get out of his way to clear the car and the road and he thought he would give things the gun and come in front of me and when he saw I was going on, then he come in, then he swung in, then he tried to throw it, and going so fast he couldn't do anything." From the time defendant first saw the motorcycle he watched it. When it turned over to the south side of the highway, it was 60 to 70 feet east of the intersection; that is when the defendant thought the motorcycle was going to pass in front of him. The front of defendant's car was four or five feet over the center of the highway at that time. When the plaintiff was about 70 feet east of him and starting onto the south side of the highway, it appeared to defendant that there would be a collision. After the accident, the motorcycle turned over on its side. It was headed southwest and was two feet east of the left front wheel of defendant's car.

A police officer of the traffic division talked with the defendant within a half-hour after the accident. Defendant told the officer he was going from five to ten miles per hour at the time of the collision, and prior thereto about five miles. He said he stopped at the stop sign and then start-

ed up again slowly across the intersection. The witness testified he talked with the plaintiff, who stated "he saw a car pull slowly from the stop sign and he thought all the time he was going to stop as it continued slowly." The officer noted skid marks for a distance of 48 feet. He testified the plaintiff "laid the motorcycle down on its side and went six more yards that way * * * and then into the automobile;" that "the motorcycle stood up as long as it would." He further testified that a motor vehicle going at 40 miles per hour would travel 60 feet per second, and that motorcycles did not stop quite as quickly as an automobile; that shutting off the throttle tended to slow down the motorcycle in much the same manner as an automobile. The foregoing constitutes the material evidence with reference to the collision and accident.

The plaintiff contends that the court erred in failing to make separate findings of fact and conclusions of law, as requested by the plaintiff. Section 20-1127, Comp. St. 1929, provides:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding (s), except, generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law."

An examination of the plaintiff's request in such respect discloses that plaintiff requested the court to find that all of the allegations and charges of negligence alleged in his petition are true, and, with respect to the conclusions of law, that each of the defendant's acts, constituting 14 separate charges of negligence, constituted negligence on the part of the defendant and was the proximate cause of the accident; that defendant had the last clear chance of avoiding the accident, and his failure to avoid the collision was negligence and the proximate cause of the accident; that the plaintiff was not negligent, and that his damages are in the total amount sued for, viz. $25,000.

It will be noted that the requested findings of fact and conclusions of law are all-inclusive, and the request is for a finding in plaintiff's favor on each and every allegation pleaded. In this connection, the purpose of findings of fact and conclusions of law is for the protection of both the court and the parties, to dispose of the issues raised by the pleadings and supported by the evidence, and to make the case easily reviewable by exhibiting the exact ground upon which the judgment rests. See *Carl v. Wents,* 116 Neb. 880, 219 N. W. 390. When the request is specific, definite and points out the essential and material findings of fact and conclusions of law applicable thereto, then assistance is given to the court, and they are helpful. However, where the request is merely a cover-all, such as in the instant case, they are not helpful, are of no value and are not such as contemplated by section 20-1127, Comp. St. 1929. Such request was improper, and it was not prejudicial error for the court to refuse it.

The plaintiff next contends that the court erred in holding that the last clear chance doctrine was not applicable to the defendant.

The person who has the last clear chance of avoiding an accident is considered, in law, solely responsible for the accident, notwithstanding the negligence of the person injured. See *Omaha Street R. Co. v. Martin,* 48 Neb. 65, 66 N. W. 1007; *Zelenka v. Union Stock Yards Co.,* 82 Neb. 511, 118 N. W. 103; *Wilfong v. Omaha & C. B. Street Ry. Co.,* 129 Neb. 600, 262 N. W. 537; *Carnes v. DeKlotz,* 137 Neb. 787, 291 N. W. 490; 45 C. J. 989.

Plaintiff invokes the doctrine of the last clear chance in his petition as follows:

"Defendant, knowing plaintiff was in a position of peril from which he could not extricate himself, failed to use due care to avoid a collision with plaintiff.

"Defendant, knowing plaintiff was in a position of peril from which he could not extricate himself, failed to stop his automobile or decrease its speed in order to avoid a collision with plaintiff."

This is based upon plaintiff's theory that when defendant's car was about half-way to the center of the highway he observed the plaintiff's motorcycle coming from a distance of 175 feet; that if defendant had stopped his car at that time plaintiff would have had half of the north side of highway No. 6 and all of the south side of the highway on which to pass; that the paved portion of the highway is 20 feet and the motorcycle required a little over three feet to pass; that, instead of availing himself of the last clear chance of avoiding the accident, defendant speeded up his car in order to pass in front of plaintiff; further, that when the front end of defendant's car was at the center or middle of the highway he slowed down. The plaintiff was then a distance of 60 or 70 feet and had turned to the south of the highway. If the defendant had stopped then, the plaintiff would have had the south part of the highway or most of it, but, instead, the defendant kept on going across the intersection. If the defendant had stopped at any time up to the moment his car reached the south edge of the highway, the collision would have been avoided, and he could have stopped his car instantly.

Section 39-1036, Comp. St. Supp. 1941, provides in part: "All motor vehicles entering or crossing such state highways on which stop signs are erected shall come to a full stop as near the right of way line as possible, before driving onto such state highway, and, regardless of direction, shall give the right of way to vehicles upon said highway." The foregoing provision of the statute is the one applicable in entering an intersection from a street or side road onto an arterial highway.

Considering the evidence: The plaintiff first saw the defendant's car when he was at a distance of at least, or more than, a block away, 300 to 400 feet. From his testimony, it is observed that he constantly watched the movement of the defendant's car. He noticed the relative position of the car at all times as it proceeded into and across the intersection. He had not slackened his speed to such an extent that he, himself, could have avoided the accident. In fact, the evi-

dence warrants the conclusion that the plaintiff lost control of his motorcycle. The defendant was endeavoring to do what an ordinarily prudent person would do under like or similar circumstances; that is, to proceed to cross the highway and at least try to clear the highway so that the plaintiff could pass on his own right side. The plaintiff admitted that when he applied his brakes he was unable to stop within a distance from the time he so applied his brakes to the point of collision. It is reasonable to assume that, knowing the position he was in and knowing his inability to stop his motorcycle, plaintiff should have applied his brakes at a greater distance east of the intersection. Even when the defendant was in the center of the highway, plaintiff was still 125 feet east of the intersection. He was aware that the defendant's car had entered the intersection. He was then traveling from 40 to 50 miles an hour. He had not then applied his brakes. He had made no attempt to decrease his speed, except to retard the throttle and shut off the gas. He testified he was unable to stop his motorcycle in the 90 feet in which he tried to stop. He was doing everything he could at the time. It is significant that the motorcycle skidded 48 to 50 feet and then on its side some 18 feet into the defendant's car. These physical facts indicate a high degree of speed and lack of control of the motorcycle. The plaintiff was not in peril except that brought about by his own negligence. He could have slowed down at a time when it would have been perfectly safe for him to do so and thus have avoided the accident.

"The doctrine of the last clear chance does not apply where the negligence of the injured party is contemporaneous and active up to the very moment of an accident, and thus contributed to cause the accident." *Hughes v. Omaha & C. B. Street Ry. Co., ante,* p. 47, 8 N. W. (2d) 509. See, also, *Long v. Guilliatt,* 137 Neb. 199, 288 N. W. 689.

The correctness of the foregoing proposition admits of no doubt. When the plaintiff was more than a block to the east of the intersection, the defendant was within 25 feet of the north edge of the intersection, and, when the plaintiff

was 175 feet east of the intersection, the defendant's car was either at the center line of highway No. 6, or a foot or two south of it. It would be unreasonable, under the circumstances that existed, to require defendant to keep any more of a lookout than he did. It is reasonable to assume that a driver will cross an arterial highway when an approaching motor vehicle is more than a block away.

We further conclude that the record in this case establishes that plaintiff was guilty of more than slight negligence. That being true, the question becomes one of law for the court, and it would be the duty of the court to direct a verdict for the defendant. See. *Eaton v. Merritt*, 135 Neb. 363, 281 N. W. 620; *Whittaker v. Hanifin*, 138 Neb. 18, 291 N. W. 723.

Where a jury is waived and a trial had to the court, and the court finds that the evidence establishes that the plaintiff was guilty of more than slight negligence, it becomes a question of law for the court, and it is the court's duty to determine the matter as a proposition of law. In *Neill v. Dakota County*, 140 Neb. 26, 299 N. W. 294, this court held: "Where a jury is waived by the parties to an action at law in the district court, the findings of the trial judge on issues of fact are equivalent to the verdict of a jury and will not be reversed on appeal, if supported by sufficient evidence."

For the reasons given in the opinion, the judgment of the trial court dismissing plaintiff's petition is affirmed.

AFFIRMED.