NEWTON W. ELLIS, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

19 N. W. 2d 641

FILED JULY 20, 1945. No. 31889.

*T. F. Hamer, R. B. Hamer,* and *G. C. Holdrege,* for appellant.

*Rosewater, Mecham, Shackelford & Stoehr* and *Tautges, Rerat & Welch,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This is an action at law for damages for personal injuries by Newton W. Ellis, plaintiff and appellee, against the Union Pacific Railroad Company, a corporation, defendant and appellant, under the Federal Employers' Liability Act. The case was tried to a jury and a verdict was returned in favor of plaintiff for $10,000. Judgment was entered on the verdict. Motion for new trial was duly filed and by the court overruled. The defendant has appealed from the judgment and the order overruling the motion for a new trial.

On March 15, 1943, plaintiff was employed by the defendant as an engine foreman in charge of a switching crew on the tracks and in the switching yards of defendant at Seattle, Washington, more particularly known as "Argo Yards." As such engine foreman he was in charge of the engineer, fireman and the switchmen and operations were under his immediate control and direction. On the day in question plaintiff began his duties at 4 o'clock p. m. The first work was done a mile or more from the scene of the accident. At some time after going on duty plaintiff received instructions from proper authority to pick up a loaded car at what is known as the Casein Plant. He proceeded with his engine and crew to the vicinity of a switch from which a spur track led to the Casein Plant where the engine was stopped. The engine was headed at that time in an easterly direction. The Casein Plant was to the south and the track from the switch to it led off southwest and then curved to the left around the west side of the building so that at the loading platform the track extended generally north and south. There was a curve in a part of the building to, in part, accommodate or compensate for the curve in the track. Investigation by plaintiff disclosed that there were two cars along side of the Casein Plant and that it was the more distant or the southernmost that was to be removed. On plaintiff's signal the engine backed on the spur and was coupled to the first car and then the two were coupled together whereupon the two cars were removed from the spur and

the second detached by plaintiff. Thereafter the switch was lined and the first car was returned or backed into the Casein Plant spur to be spotted along side of the Casein Plant loading platform. At the time, plaintiff was on the ground and had proceeded toward the Casein Plant. He was, at the time of the accident, on the east side of the track and between it and the Casein Plant building. The car came around the curve and plaintiff was caught between it and the building on account of the narrow clearance between the car and the building at that point. He was injured in consequence of being so caught.

The plaintiff predicated his cause of action on negligence on the part of the defendant. The grounds of negligence alleged and necessary to be mentioned herein were: (1) That defendant failed to provide and maintain for plaintiff a reasonably safe place to work, and negligently failed to provide and maintain adequate, sufficient and safe clearance between the track upon which defendant moved its engine and cars and the said Casein Plant building; (2) that the car which came in contact with the plaintiff was too large to safely move on the spur track; (3) that the defendant failed to maintain the spur track in a reasonably safe condition and permitted it to become rough, uneven and unstable and permitted low joints to exist to such an extent as to cause the car in question, while in motion, to list, sway, pitch and lurch in the direction of the building, thereby reducing the clearance between the side of the car and the building; (4) that the defendant moved the car toward and past the building at a dangerous and excessive rate of speed; and (5) that defendant failed to exercise reasonable care for the safety of plaintiff by failing to keep a proper lookout and by negligently failing to warn plaintiff of the danger to which he was subjected while in a position he was necessarily occupying while engaging in switching operations. There was no effort made to sustain the remaining specific charges of negligence.

In its answer the defendant admitted that plaintiff was injured but denied that it was guilty of any negligence. Af-

firmatively it alleged that the accident and injuries to plaintiff resulted solely and proximately from the carelessness, recklessness and negligence of the plaintiff.

This allegation of negligence by the defendant was denied in a reply by the plaintiff.

As grounds for reversal of the judgment the defendant has set forth in its brief numerous assignments of error. The first five challenge the sufficiency of the evidence, in fact and in law, to permit the submission of the issue or issues made by the pleadings to a jury, or to sustain a verdict thereon in favor of the plaintiff. It therefore becomes necessary to review the evidence pertinent to the allegations of negligence set forth and the assignments of error and to analyze it in the light of applicable legal principles.

For the purposes of this review and analysis and in the light of the contentions of the defendant in this respect we proceed with a full recognition of the well established legal principle that the court must resolve in favor of the plaintiff all factual questions upon which there is a substantial conflict in the evidence. Those questions were for the jury under proper instructions. The rule as stated in the case of *Roberts v. Carlson,* 142 Neb. 851, 8 N. W. 2d 175, is as follows: "A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence."

From the record it appears that at the time of the accident plaintiff was 42 years of age. He was first employed by the defendant in April, 1942, and continued in its employ until March 15, 1943, the date of the accident. He was employed as brakeman and switchman until February, 1943, when he was promoted to the position of engine foreman. He was not always in charge of the same crew or the same engine. His usual assignment did not include the Casein Plant spur. There is a sharp conflict in the evidence on the

question of whether 'or not he had ever participated in switching on this spur until the incidents involved here occurred. His testimony is that he was unfamiliar with the width of the clearance between the spur track and the Casein Plant buildings. During the afternoon he received an order from the yardmaster to remove a loaded car from the spur. About 7 o'clock p. m. with his crew he went to the switch leading into the spur and found thereon two cars, one loaded and one empty. The loaded car was removed after which, under his direction, the empty car was being returned to be spotted to the west and opposite the Casein Plant loading platform. The engineer was backing the car on the spur and receiving his signals for movement from plaintiff. Just before the accident occurred plaintiff was on the east side of the track and between the car and the building. A brakeman was farther south for the purpose of passing signals to plaintiff to be passed on by him to the engineer the purpose of all of which was to spot the empty car opposite the loading platform. According to plaintiff's testimony the brakeman passed from view on account of the curvature of the building, whereupon plaintiff turned and walked a few feet south. The car continued in the same direction and in consequence of the narrow space between the track and the building he was caught between the center of the car and the building. That he was caught because there was not sufficient clearance at that point is not questioned. As soon as the engineer saw the predicament he stopped the engine. He stopped it in the distance of 12 or 14 inches. Help responded at once from the crew but it was impossible to release plaintiff without movement of the car. The engineer pulled forward a few inches and plaintiff was extricated from his position. In the performance of his work and the control of the train it was proper for the plaintiff to be on the right side. A proper place also was on the opposite side. In the present instance it was less convenient to be on the left side in view of the curvature of the track and the fact that the engineer to whom signals were required to be transmitted was on the right side. The area

to the west or left side was open and on that side there was no impaired clearance. Some distance to the north or northwest and between the building and the spur track there was a standard of undetermined height, but probably six or seven feet high, on which was a sign facing outward from the building bearing in large type the words "Impaired Clearance." Plaintiff said that he had not seen this sign and there is no evidence to the contrary. It was in plain view. By inference plaintiff suggests that the sign was put in position after the accident but there is no evidence warranting the inference. During all of the time involved it was still light and from meteorological reports it appears that the sun had not set. There was evidence that the car was large but none that its width exceeded the width of cars in general use or that cars of its length were not standard.

We pass from this brief review of the evidence to elements of negligence charged and will first consider the charge that the car was moved at a dangerous and excessive rate of speed.

The evidence clearly indicates that the car was being operated at a very low rate of speed, in fact at such a low rate that the engineer, as hereinbefore pointed out, was able to stop it in the distance of 12 or 14 inches. There is nothing in the record from which a reasonable inference could be drawn that speed was in any wise a factor in the happening of the accident.

The next charge of negligence which will be considered is the allegation that the defendant failed to exercise reasonable care for the safety of plaintiff by failing to keep a proper lookout and in failing to warn him of his danger. Under the theory on which the case was tried the substance of the charge is that the engineer failed to keep a proper lookout and failed to warn plaintiff of his danger. The theory of plaintiff under this charge is that he has a right of recovery under "the last clear chance" doctrine.

The evidence is clear that the engineer did not observe the danger to plaintiff and of course did not warn him. The evidence is also clear that the engineer was not in a position

to better observe the danger to plaintiff than plaintiff was himself. In fact he was the length of a part of the car, the length of the tender and the distance from the tender to his position in the cab farther from the point of danger than was plaintiff and also he was operating his engine under the direction of the plaintiff.

Black's Law Dictionary (3d ed.), p. 1071, defines the last clear chance doctrine generally as follows: "In the law of negligence, this term denotes the doctrine or rule that, notwithstanding the negligence of a plaintiff, if, at the time the injury was done, it might have been avoided by the exercise of reasonable care on the part of the defendant, the defendant will be liable for the failure to exercise such care." See *Styles v. Receivers of Richmond & D. R. Co.*, 118 N. C. 1084, 24 S. E. 740; *McLamb v. The Wilmington & W. R. Co.*, 122 N. C. 862, 29 S. E. 894. This general rule has received restrictions and explanations at the hands of the courts when it has become necessary to apply it. One such restriction is that before the doctrine can apply there must be opportunity to avoid.

On this restriction this court has said: "Before the doctrine of last clear chance can apply, the defendant must have had a chance to have avoided the collision, for the doctrine presupposes time for action." *Diehm v. Dargaczewski*, 135 Neb. 251, 280 N. W. 898; *Moses v. Mitchell*, 139 Neb. 606, 298 N. W. 338. It was also said: "In the absence of proof of opportunity to avoid injuring such person after his danger was discovered, or ought to have been discovered, there is no reason for the application of the 'last clear chance' doctrine." *Johnston v. Delano*, 100 Neb. 192, 158 N. W. 1034; *Moses v. Mitchell, supra*.

Another restriction approved by this court is that if a plaintiff is found to have been in a perilous position negligently created by himself and he had the last clear chance to escape and neglected to do so up to the time of the accident the doctrine can have no application. On this proposition in *Long v. Guilliatt*, 137 Neb. 199, 288 N. W. 689, it was said: "It would be exacting too much of the law to permit

plaintiff to recover, if, in a perilous situation negligently created by himself, he had the last clear chance to escape and neglected to do so up to the very instant of the accident."

Still another restriction placed upon the rule by this court is the following: "The doctrine of the last clear chance does not apply where the negligence of the injured party is contemporaneous and active up to the very moment of an accident, and thus contributed to cause the accident." *Hughes v. Omaha & C. B. Street Ry. Co.*, 143 Neb. 47, 8 N. W. 2d 509; *Donald v. Heller*, 143 Neb. 600, 10 N. W. 2d 447.

These restrictions of the Nebraska decisions upon the doctrine find support in other jurisdictions including the federal courts. See *Soles v. Atlantic C. L. R. Co.*, 184 N. C. 283, 114 S. E. 305; *Newport News & M. V. Co. v. Howe*, 6th Cir., 52 Fed. 362, 3 C. C. A. 121; *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S. 551, 11 S. Ct. 653; *Grand Trunk Ry. Co. v. Ives*, 144 U. S. 408, 12 S. Ct. 679; *Southern Ry. Co. v. Gray*, 241 U. S. 333, 36 S. Ct. 558; *Marshall v. Hines*, 8th Cir., 271 Fed. 165; *Miller v. Union P. R. Co.*, 8th Cir., 63 F. 2d 574; *St. Louis S. W. Ry. Co. v. Simpson*, 286 U. S. 346, 52 S. Ct. 520.

It cannot be said under the evidence in this case that the engineer had an opportunity to avoid the accident after he observed or in the exercise of ordinary care should have observed the danger to plaintiff. Under the evidence it is clear that in the exercise of ordinary care the plaintiff had at least an equal opportunity with defendant's engineer to observe his danger, thus if the engineer was negligent so also was plaintiff contemporaneously negligent right up to the time of the accident. Therefore, assuming that the engineer was negligent, the contemporaneous negligence of plaintiff would defeat a recovery under the last clear chance doctrine.

On the other hand if it be contended that plaintiff was not negligent it cannot be reasonably contended under the evidence that the engineer was negligent. He testified, on behalf of plaintiff, that he did not perceive plaintiff's danger

and the evidence indisputably shows that he was not in any better position to observe than was plaintiff.

We must therefore hold that the plaintiff has failed to sustain by any competent evidence a right of recovery under the last clear chance doctrine.

Examination of the bill of exceptions discloses that the charge that the condition in which the spur track was maintained caused a reduced clearance between the car and the building is without support in the evidence. The only evidence bearing on this question is exactly to the contrary. The evidence is to the effect that in construction the elevation of the outer rail is probably above the inner, yet with the slow movement of the car at the time in question there was no listing, swaying, pitching or lurching in the direction of the building.

The remaining charge of negligence is that of whether or not the accident was caused by the failure of defendant to provide and maintain for plaintiff a reasonably safe place to work. If there is competent evidence that it did so fail and in consequence and as the proximate cause thereof plaintiff received the injuries complained of or some of them he is entitled to recover, this being concededly an action under the Federal Employers' Liability Act (Title 45, U. S. C. A., sec. 51 *et seq.*).

The plaintiff contends that by the failure of defendant to have provided sufficient clearance between its spur track and the Casein Plant building at the point where he was caught it failed in its duty to provide for him a reasonably safe place to work within the meaning of the law. The defendant on the other hand denies this and on its part asserts that plaintiff in placing himself in the position in which he received his injuries was guilty of negligence which was the proximate cause of those injuries.

A determination of this issue or these issues does not depend upon a resolution of disputed facts. It depends upon application of legal principles to a substantially undisputed set of facts.

There was not sufficient space within which to work at

the point where plaintiff was hurt. As already pointed out plaintiff was in charge of the train crew and it was his duty to control the movements of the train. It was the duty of the engineer to control the movements under the direction of plaintiff or the brakemen who were under plaintiff's control. Control was exercised in daylight by hand signals. Plaintiff was properly exercising control at the time of the accident. It was customary and usually more convenient to exercise control from the right than the left side and especially on a curve the inside of which was to the right, for the reason that it was easier to get signals to the engineer whose position is in the cab on the right side of the engine. It is also usual and customary and acceptable practice for trains to be controlled by the engine foreman and his brakemen from the opposite side by relay of signals, usually through the fireman, to the engineer, where convenience, safety or judgment requires. If the latter practice had been followed in this instance this accident could not have occurred, since on that side of the train there was no question of narrow clearance or obstruction.

On the question of negligence on the part of plaintiff warning or knowledge of the dangerous situation is a matter of importance. A warning of impaired clearance was appropriately placed by the carrier but plaintiff said he had not seen it and the effect of his testimony is that he was never in a proper position to see it. Also he said that he had never been in this vicinity and had no previous knowledge of the surroundings. For present purposes therefore it must be assumed that he had no previous warning of the condition complained of and was chargeable with no knowledge or information in regard thereto except such as would flow from reasonable observation under the conditions and circumstances in the light of his knowledge and experience in the work in which he was engaged.

Whether or not defendant was negligent depends upon the question of whether or not under the recited facts and within the meaning of the law the defendant furnished plaintiff a reasonably safe place to work, assuming of course

that plaintiff had no previous knowledge and was not warned of the impaired clearance between the track and the building.

As a condition to a finding of negligence against the defendant in this respect it must appear either that plaintiff was required to work in the position where he was injured, or that the surrounding conditions and circumstances coupled with his experience and the requirements of his employment were insufficient to reasonably apprise him of the danger of that position.

As already pointed out he was not required, in the performance of his service for the defendant, to work in the position where he was injured. A reasonably safe place elsewhere was provided. The choice of places within which to work was his own.

The evidence of plaintiff must be accepted the effect of which is to say that he was not in fact aware of the danger. Was the danger then under the circumstances of such a character that he should have, in the exercise of reasonable care, observed it? Upon the answer to this question depends the answer to the question of whether or not the defendant was guilty of negligence, and also that of whether or not the plaintiff was guilty of negligence which was the proximate cause of the accident.

The courts of other jurisdictions have spoken to this question in cases involving comparable states of facts under the Federal Employers' Liability Act. This court has passed on no case closely in point as to facts.

The first case to which we shall call attention having a similar state of facts is *Haring v. Great Northern Ry. Co.,* 137 Wis. 367, 119 N. W. 325. In the opinion it was said: "Appellant claims that the position of the car on the curve of the track left an open space between the ends of the car and the edge of the platform, and that this would naturally invite employees to occupy this space and lead them to believe they were in a safe place, and that therefore such a construction rendered the appliance defective and unsafe. Nothing unusual or extraordinary results from a car pass-

ing over a curve in proximity to a platform. It is manifest that this was an appropriate way of constructing the car and platform. The fact that the ends of the car in passing over the curve would be farther away from the platform than at the points between the ends is a natural condition which the deceased, as a reasonably intelligent person, must be presumed to know and note, and his omission to do so was an act of negligence."

In *Baltimore & O. R. Co. v. Newell,* 3d Cir., 196 Fed. 866, a case similar in principle but not in fact, the court said: "Railroading is at best a somewhat dangerous employment, and requires and bespeaks reasonable prudence and care on the part of those employed in its conduct. Undoubtedly there are, in the general course of its business, specific places and situations in which employés are required to work, and there is a clear legal duty imposed upon the railroad company to keep these places safe for that purpose. The question, therefore, that arises in the case before us is, was the space between the edge of the freight platform and the body of a freight car a place within which the plaintiff was required to work, and therefore to be kept reasonably safe for that purpose by the defendant? We think not. On the contrary, it was a place from which employés were excluded by the obvious situation. * * * But it is not as to the platform as a place to work upon that the allegation of unsafety is made, but as to the space between the side of a freight car and the edge of a platform, in which no employé was required to work. Clearly the railroad company was not obliged, in considering the dimensions of that space, to provide for the safety of one who voluntarily placed himself therein."

In *Stone v. Chicago & N. W. Ry. Co.,* 176 Minn. 104, 222 N. W. 641, which was a clearance case, the court said: "Plaintiff charged in her complaint that defendant negligently failed to provide and maintain a safe and sufficient clearance between the track and the platform but does not urge that claim here. It would clearly be untenable. Defendant did not construct either track or platform and did

not own or control either. The matter of constructing them and of locating them properly in relation to each other was an engineering problem. They were arranged for the purpose of bringing cars into a convenient position to be loaded from the platform. The plan did not intend a space for employes between cars and platform, and there was no need for employes to be in the space between them."

This court in *Sullivan v. Chicago & N. W. Ry. Co.*, 128 Neb. 92, 258 N. W. 38, a case not in point on the facts but in point on the question of obvious danger, said: "The defect upon which plaintiff relies to show negligence was not latent but obvious. * * * In an action by an employee against his employer, a railway company, under the federal employers' liability act, there is generally no liability for injuries from dangers that are obvious."

Other cases bearing on the question of injuries sustained by railroad employees in positions where it was not contemplated that they would be found and on the absence of negligence in situations where the danger is obvious are: *Canadian Northern Ry. Co. v. Walker*, 8th Cir., 172 Fed. 346; *McCann v. Minneapolis & St. L. R. Co.*, 159 Minn. 70, 198 N. W. 300; *Lenz v. Union P. R. Co.*, 128 Neb. 99, 258 N. W. 33; *Davis v. Hand*, 8th Cir., 290 Fed. 73; *Toledo, St. L. & W. R. Co. v. Allen*, 276 U. S. 165, 48 S. Ct. 215; *Delaware, L. & W. R. Co. v. Koske*, 279 U. S. 7, 49 S. Ct. 202; *Atlantic C. L. R. Co. v. Powe*, 283 U. S. 401, 51 S. Ct. 498.

The cases thus far cited and quoted from favor the position contended for by the defendant. Plaintiff cites a number of cases which he asserts support the contention that negligence on the part of the defendant and also of the plaintiff under the evidence was one for the jury. The case most closely in point and most favorable to his position is *Hemmingsen v. Chicago & N. W. Ry. Co.*, 134 Wis. 412, 114 N. W. 785.

Hemmingsen, an experienced brakeman, was working on the side of the track opposite a loading platform of irregular outline. He was ordered to cut off a car and immediately crossed the track in front of the cars where he was

caught between a car and the platform. The court in the opinion adhered to the rule that where the danger was known or should have been known there could be no recovery but concluded in that case that the question was one for the jury. The opinion speculates at considerable length on reasons why Hemmingsen did not observe his danger and why it was not obvious to him but finally, in the following words, points to an inference from the evidence that he did not have sufficient time or opportunity to become apprised of his danger and extricate himself therefrom: "Now it may well be that he was caught before he had time to know the danger or extricate himself from it, if he did discover it, while in the perilous position."

Under the rule of the cases in this respect the burden was on the plaintiff to adduce evidence from which a reasonable inference could be drawn that in the exercise of reasonable care he did not or could not know of his danger.

We think his evidence is not subject to such an inference. It was daylight. He gave the signal for the movement, then not seeing the brakeman who was to give a signal for the spotting of the car he turned and walked in the direction of the movement of the car between it and the building, of necessity in very close proximity to both, and thereafter paid no attention to the fact that the car was closing in on him until he was caught.

Reasonable regard for his own safety, especially in the light of his duties and his experience, required that he take some note of his surroundings. If after turning about he had paid any attention to his situation the accident could have been readily avoided. To a person in the exercise of reasonable and ordinary care the danger would have been obvious.

It follows therefore that, the plaintiff having failed to prove any of his charges of negligence, the court erred in submitting the case to a jury. It further follows that it is unnecessary to determine directly the question of whether or not plaintiff was guilty of negligence which was the proximate cause of the accident, or to pass upon other errors assigned as grounds for reversal.

The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.