ELLIS *v.* UNION PACIFIC RAILROAD CO.

No. 320.   Argued January 16, 17, 1947.—Decided February 3, 1947.

*George Mecham* argued the cause for petitioner.   With him on the brief were *L. Wm. Crawhall* and *William A. Tautges.*

*Robert B. Hamer* argued the cause for respondent. With him on the brief was *Thomas W. Bockes.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner was crushed between a moving railroad car and a building while working for respondent railroad as

an engine foreman in charge of a switching crew. Damages for personal injuries were sought in a Nebraska state court under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.* Judgment was rendered for petitioner on a jury verdict for $10,000, but on appeal the state Supreme Court reversed for insufficiency of evidence to show negligence, and ordered the complaint dismissed. 146 Neb. 397, 19 N. W. 2d 641; 147 Neb. 18, 22 N. W. 2d 305. We granted certiorari because of an apparent conflict between that decision and *Lavender* v. *Kurn,* 327 U. S. 645.

Petitioner's evidence tended to show the following: Petitioner, aged 41, had been in the employ of respondent only one year, and had a total railroad experience of two or three years. Just before sunset on March 15, 1943, he was engaged, along with other members of his crew, in backing an engine and box car around a curve on a spur track where visibility was obstructed by a building located on the inside and near the middle of the curve. He was standing on the ground on the same side as the building and to the right of the engine, and was controlling operations by hand signals to the engineer. Engine foremen frequently stand to the right of the engine, on the engineer's side of the cab. A switchman was located around the curve, out of sight of the engineer, on a loading platform at which the car was to be "spotted." Petitioner moved between the building and the track in an attempt to be in a central position from which he could receive signals from the switchman and relay them to the engineer. As the car moved past petitioner, it caught and pinned the upper part of his body against the wall of the building, causing serious injuries. The situation was deceptive because the overhang of the car on the curve and its tilt toward the building resulting from a higher outside rail, reduced clearance materially. In fact, the place where petitioner was standing was in the one short segment

of the arc of the curve where clearance was insufficient. Petitioner was unfamiliar with the area and its hazards; if there was a sign warning of the danger, he did not see it; no effort was made to warn him personally. The nearness of the track to the building created an unsafe place for work. Though the engineer was an experienced railroad worker thoroughly familiar with this particular spur, and though it was his duty to watch petitioner continuously or stop the engine,[1] he failed either to warn petitioner or to stop in time to avert the tragedy. During the operation the engineer could see the right side of petitioner and when he saw petitioner's right foot twisted on the ground, he stopped the train.

Respondent's evidence, on the other hand, tended to establish the following: Petitioner was inconsistent in his statements, and it actually appeared that he had worked around this spur a number of times. The clearance, once adequate, was impaired by a subsequent extension of the building over which the respondent had no control. Neither the overhang of the car nor the pitch of the curve was unusual. Respondent maintained, near the building and some eight feet above the ground, a prominent, legible sign reading "IMPAIRED CLEARANCE." It was not required or desirable that petitioner stand between the building and the track; he could equally well have performed his functions on the left, or safe, side of the engine. He did not stand where he could see the switchman, and, in fact, it was not necessary for him to relay signals from the switchman since the engineer would be in a position to watch the switchman himself when the car approached the loading platform. The engineer had not worked on the

---

[1] The engineer was required to have some member of the crew in sight at all times when the engine was in motion. At the time of the accident the undisputed testimony indicated that petitioner was the only member of the crew that the engineer could see. The engineer testified that he watched petitioner continuously.

ground and was not aware of the precise hazard; his distance from the petitioner (about 60 feet) and the configuration of the building were such that it was not apparent that the petitioner was in peril. That the engineer was vigilant is somewhat supported by the fact that the train was moving only one or two miles an hour and that he stopped it almost instantly, and within a distance of 12 or 14 inches, when petitioner was pinned between the car and the building.

From this evidence the jury might have concluded that petitioner had a safe place to work but elected to choose a dangerous one, that any duty of warning was fully discharged by the presence of the sign, and that the engineer had not been negligent in any way. In that view of the case the accident would be an unforeseeable, freak event or one caused solely by petitioner's own negligence. On the other hand, it would not have been unreasonable for the triers of fact to have inferred that it was proper and usual procedure to work on the right side of the engine, that the hazard was not readily apparent and was almost in the nature of a trap, that while the sign was placed so as to be readily visible from a train, it was insufficient warning to a man on the ground, and that consequently petitioner was not furnished a safe place to work.[2] And the jury might have thought that the engineer was negligent in failing to perceive the peril in time to avert the accident by a warning or by stopping the engine. Again, both parties might have been found negligent, in which event it would have been the duty of the jury, as the trial judge charged, to render a verdict based upon the damages caused by respondent's negligence diminished by the pro-

---

[2] The duty of the carrier to furnish a safe place to work "is not relieved by the fact that the employee's work at the place in question is fleeting or infrequent." *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, 353.

portion of negligence attributable to petitioner. 45 U. S. C. § 53.

The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be "in whole or in part" the cause of the injury. 45 U. S. C. § 51; *Brady* v. *Southern R. Co.,* 320 U. S. 476, 484. Whether those standards are satisfied is a federal question, the rights created being federal rights. *Brady* v. *Southern R. Co., supra; Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350.

The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury. *Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29; *Lavender* v. *Kurn, supra.* Once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair-minded men might reach a different conclusion. For then it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable. *Lavender* v. *Kurn, supra,* p. 652. And where, as here, the case turns on controverted facts and the credibility of witnesses, the case is peculiarly one for the jury. *Washington & Georgetown R. Co.* v. *McDade,* 135 U. S. 554, 572; *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U. S. 54, 68.

We think the evidence raised substantial questions for the jury to determine and that there was a reasonable basis for the verdict which it returned.

*Reversed.*