### KANSAS, OKLAHOMA & GULF RY. CO. v. WOODWARD.

#### No. 4448.

United States Court of Appeals
Tenth Circuit.
July 18, 1952.

James D. Gibson, Muskogee, Okl. (Kelly Brown, Muskogee, Okl., was with him on the brief), for appellant.

Donald T. Barbeau, Minneapolis, Minn. (J. Howard Edmondson, Muskogee, Okl., and William H. DeParcq, Minneapolis, Minn., were with him on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This action was brought under the Federal Employers' Liability Act. 45 U.S.C.A. § 51, et seq. Appellee, Charles G. Woodward, was and had been employed as a brakeman by appellant, the Kansas, Oklahoma and Gulf Railway Company, for approximately six years. On the day of the accident out of which this litigation arose, he was acting as head brakeman on a work train engaged in picking up and loading on flat cars rails that had been removed from the railroad company's road bed near Denison, Texas. Appellant's employees engaged in these operations consisted of two groups. One consisted of the engineer, the fireman and Woodward. The other consisted of six workmen, a crane operator and the roadmaster. Appellee had no connection with the latter group or with the work performed by them. His sole duties consisted of assuming a position where he could be seen by the engineer and fireman and signal them as to the speed of the train and when to stop and start forward to effect the loading operations. The train consisted of the engine, the water car, two flat cars and a crane car placed between these two cars, on which was mounted a large loading crane. As the train moved South, the crane was positioned so that it picked up the rails on the West side of the tracks. When that operation was completed, the crane was reversed and picked up the rails on the East side, while the train was being operated in reverse. Appellee's orders were to take a position where he could observe the loading operations and give appropriate signals to the engineer and fireman. Thus when the rails were being picked up on the West side of the tracks and the train was proceeding in a Southerly direction, he took a position on the West side of the water car and gave the signals to the engineer. When the rails were being picked up on the East side, he took a position at the Northeast corner of the crane car and gave the signals to the fireman. Up to the time of the accident, appellee was performing his usual and customary duties of signaling the fireman. His position at that time was the usual and customary position. In the Southerly operations, one rail was left on the West side. This fact was unknown to appellee. When the last rail had been picked up on the East side, appellee assumed that the operations for the day were over. At that point, the crane operator was advised by the roadmaster of the remaining rail on the West side and was directed to turn the crane around, or "boom around" for the purpose of picking up this rail. It was while this operation was being performed that appellee was injured. There was no direct evidence as to how he was injured aside from his own testimony. He was first seen lying under or near the rails in an injured condition with torn clothing.

Appellee testified that he did not know of the remaining rail on the West side and that he assumed that the operations for the day were over, when the last rail on the East side had been picked up, and that he was signaling the fireman to stop the train, when the accident occurred. He testified that he heard the roadmaster call out "boom around" and "about that instant the machine hit me and knocked me off to the other side on the shoulder of this ground"; that he heard no warning before the boom swung around and that no one told him that the boom was to be swung around.

■ Appellant's whole case is predicated on the argument that appellee's testimony as to the manner of his injury is in irreconcilable conflict with absolute physical facts and that, therefore, a judgment based

thereon cannot stand. The law is clear that where there is an irreconcilable conflict between oral testimony and absolute physical facts the latter control. This principle of law is well established and needs no citation of authorities to support it.

Applying this doctrine to the evidence here, appellant argues that the physical facts with respect to the turning of the crane, the time required to "boom around" as well as the testimony of the other employees with respect to the command to "boom around" reduce to absurdity appellee's testimony that he was struck about the instant he heard the command to "boom around." There was evidence by appellant that it took from fifteen to seventeen seconds to "boom around" after the gears were shifted. The testimony of the six workers that they heard the command to "boom around" and had started for their positions on the West side, the testimony that the roadmaster called to the crane operator informing him that they had one more rail to pick up on the West side, and that the operator waited a few seconds and then asked the roadmaster whether he was ready and, being informed that he was, then started to "boom around" does not relate to physical facts. It was the testimony of witnesses as to their recollection of what occurred. It was offered to show that these conversations were had under such circumstances that appellee must have heard them and, therefore, have been warned thereby. While this testimony would go to the weight to be given appellee's testimony that he did not know that the loading crane was to be reversed in time to protect himself, it is not of such a nature as to constitute an absolute physical fact, which destroys the probative value of appellee's oral testimony. The testimony of the remaining workmen, of the crane operator, and of the roadmaster is but an expression on their part as to what occurred and is not of such finality as to bring it within the absolute physical fact rule. So also the testimony that it took from six-

teen to seventeen seconds to turn the crane is but an expression of opinion. In any event, it would not destroy appellee's testimony that he was not warned and that he did not hear the order to "boom around" until about the time he was knocked from the car. We think it is a matter of common knowledge of which we may take note that testimony of time or distance involved in an emergency, when subsequently given, is but an expression of a witness' best opinion and recollection and can be only an estimate and not a statement of an absolute fact concerning which there can be no dispute so as to bring into play the doctrine of absolute physical facts. There are no determinative absolute physical facts in this case. Appellant's witnesses gave their estimate of time involved in the operation of the crane and the interval of time between the inquiry by the crane operator of the roadmaster whether he was ready and his reply and order to "boom around." Appellee testified positively that he was not warned and in effect that he did not hear the warning to "boom around" in time to protect himself from injury. There was a clear conflict in the evidence and inferences deducible therefrom as to what occurred and the jury resolved the conflict against appellant.

It was appellant's duty to furnish appellee a safe place in which to work.[1] The place he occupied was safe, while the rails on the East side were being loaded. It would become unsafe only if the crane were to be swung around again at the completion of that operation. Appellee testified that the work on that side had been completed; that he did not know that an unloaded rail remained on the West side and that the crane was to be reversed to load it. He testified that he considered the work for the day done and that he had given the fireman the signal to stop the train. Under these circumstances, his place was a dangerous one if the crane were to be swung around, and it was the duty of appellant's employees under these circum-

1. Bailey v. Central Vermont Ry. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572.

stances to warn him of the impending operation and failure so to do would constitute negligence.

The choice of conflicting versions of the way the accident happened, the decisions as to which witness was telling the truth, as well as the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury.[2] The trial court heard the testimony and accepted the verdict of the jury. We cannot say as a matter of law that the verdict and judgment are unsupported by the record and the decision appealed from is, therefore, affirmed.

2. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.