**GILL v. PENNSYLVANIA R. CO.**

No. 10744.

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1952.

Decided Feb. 3, 1953.

Rehearing Denied March 4, 1953.

As Amended March 25, 1953.

Theodore Voorhees, Philadelphia, Pa. (Robert M. Landis and Robert D. Williams, Philadelphia, Pa., Barnes, Dechert, Price, Myers and Rhoads, Philadelphia, Pa., on the brief), for appellant.

Joseph G. Feldman, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Plaintiff, a car repairman's helper in the employ of the defendant, Pennsylvania Railroad Company, brought suit under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq.,[1] to recover damages for personal injuries sustained in the course of his employment in interstate commerce. The defendant appeals from a judgment for the plaintiff, contending that there is no evidence of negligence proximately causing the injuries.

The facts, presented in a light most favorable to the plaintiff, are as follows:

In July, 1948, plaintiff sustained an injury to his knee which required surgery in March, 1949, as a result of which he was disabled until October, 1949. From 1914 to 1949 he had a mechanic's rating, but when he returned to work in October, 1949, he voluntarily took a lower rating (helper) at lesser pay, because of the injury to his left knee which would cramp when in a kneeling position. The Company had notice of his disability. On October 24, 1949, plaintiff was ordered to assist a fellow employee in a box car equipped with racks.

[1]. Section 51 provides, *inter alia*, as follows: "Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *."

He had never worked in such a car before, and was given no instructions. The car had doors on both sides, and racks where auto parts were stored on both ends of the car, beyond the doors. These racks extended from four and one-half feet above floor level to the top of the car, making it impossible for a man of normal height to stand under them. Plaintiff, upon entering the car, crawled about eight feet to reach the other employee. There was no artificial light in the car, but there was natural light coming in through the open doors. By Company order, plaintiff had to wear goggles while in the car.

Plaintiff was working on the floor of the car, beneath the racks. He was down on his right knee, and had his left leg extended because he was unable to kneel on it. After about ten minutes in that position his left knee became cramped and painful, and being unable to stand up under the racks, he started to back out a distance of about eight feet, still having on his goggles. He thought he was clear of the racks and stood up. Unfortunately, however, he was not clear of the racks, and when he stood up he bumped his head against a metal part, suffering serious permanent injuries.

On these facts, the jury returned a verdict of $15,000, which the trial judge reduced to one-half because of the plaintiff's contributory negligence.

The question presented is whether the case should have gone to the jury, or whether, as a matter of law, it should have been determined that there was no legal proximate causation between the alleged negligence of the defendant in sending plaintiff into the car and the injury to him.

The Supreme Court, since its 1943 Term, has granted certiorari in an unusually large number of cases [2] arising under the Federal Employers' Liability Act, in an effort to articulate the basis of an employer's liability for negligence under the Act.

The Supreme Court has been particularly concerned with defining the respective functions of court and jury in relation to the power of the trial judge to withhold a case from the jury and the right of an appellate court to set aside a jury verdict.

We have reviewed all of those cases, and in certain respects the law enunciated therein by the Supreme Court is a modification of common-law principles. Generally, the Supreme Court has shown a disposition to allow cases to go to the jury where, at common law, a verdict would have been directed for the defendant.[3] But there are limitations. "The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury." Ellis v. Union Pacific Railroad Co., 1947, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572. Tenant v. Peoria & Pekin Union Railway Co., 1944, 321 U.S. 29, 32, 64 S.Ct. 409, 88 L.Ed. 520;

---

2. From 1943 to 1949, 55 petitions involving issues of negligence were filed and 20 granted. Wilkerson v. McCarthy, 1949, 336 U.S. 53, 70, 69 S.Ct. 413, 93 L.Ed. 497 (concurring opinion of Douglas, J.). See pages 71, 72, 73 of 336 U.S., pages 422, 423 of 69 S.Ct. for a detailed list of the cases.

3. For example, even where the evidence is uncontroverted, but gives rise to two equally plausible inferences (one that the defendant was at fault and the other that he was not), " * * * The choice of conflicting versions of the way the accident happened * * * " is a question for the jury. Ellis v. Union Pacific Railroad Company, 1947, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572. "It is no answer to say that the jury's verdict involved speculation and conjecture." Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 and, "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where * * * there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent * * *." Lavender v. Kurn, supra. Apparently then, so long as the evidence supports the particular inference the jury draws from it, the verdict may not be disturbed even though other equally reasonable inferences could have been drawn from the same uncontroverted evidence.

Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Reynolds v. Atlantic Coast Line, 1949, 336 U.S. 207, 69 S.Ct. 507, 93 L.Ed. 618; Lillie v. Thompson, 1947, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73. As was said in Brady v. Southern Railway Co., 1943, 320 U.S. 476, 479, 480, 484, 64 S.Ct. 232, 234, 88 L.Ed. 239:

> "The weight of the evidence under the * * * Act must be more than a scintilla before the case may be properly left to the discretion of * * * the jury. When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise * * *. The rule as to when a directed verdict is proper * * * is applicable to questions of proximate cause."

In the instant case, even assuming that the defendant was negligent, there was no causal connection between its negligence and the injury to the plaintiff. We are of the opinion that as a matter of law the case should not have been submitted to the jury.

The immediate cause of the accident was succinctly stated by the plaintiff at the trial and by his counsel in his brief. We quote from the record:

> "A. Well, I was trying to get out of the car, and I come out and I thought I was clear of the racks, and I raised my head up and hit my head.
>
> "Q. In other words, you misjudged your position? A. Yes."

There is nothing in the record to contradict this critical admission, and counsel in his oral argument so conceded. If plaintiff had stood up because the pain in his bad knee made him do so before he was in the clear, we would have a clear chain of events leading from defendant's negligence to injury. There was no such testimony.

The crux of plaintiff's argument seems to be that the negligence of the defendant in sending the plaintiff to the car caused the accident, because he would not have misjudged the distance if he had not been there. But that does not constitute legal proximate cause. To the contrary, it is almost a hornbook illustration of no proximate causation. In tracing the chain of causation beyond the plaintiff's own carelessness, the question must be: Why did he misjudge the distance? It is no answer legally or logically to say that he did so because he was sent in the car. Recognizing this deficiency in his case, plaintiff contends that he misjudged the distance because he was forced to back out rather than go forward, on account of the pain in his knee. That would have constituted legal causation but unfortunately for the plaintiff the record is bare of any evidence that such was the case. It is true that the plaintiff testified he made his exit because of the pain in his knee but he did not say that he was forced *by his pain* to crawl backward instead of forward as his counsel now argues. Indeed, the exhibits portraying the inside of the box car clearly indicate that it would have been impossible for the plaintiff to crawl forward in the direction in which he was facing when he started his exit. The box car was closed at both ends and its doors were in its center. Since the racks extended from the dead ends of the car toward the center, the plaintiff had but two alternatives in making his exit—he could either crawl backward as he did or turn around and crawl forward toward the doorway in the center. It is not the defendant's fault that he did not choose the latter method—he did not say that it would have been painful to do so, or, as previously stated, that his pain compelled him to crawl backward.[4]

---

4. All that appears in the record on that score is the following:

"Q. For how long a period of time would you say you were working there before something happened? A. Well, I would say about ten minutes.

"Q. Then what happened? A. Well, I started to back out.

"Q. Why? A. Well, on account of my knee.

"Q. What happened to the knee? A. Well, the knee was cramped from being in there the way I was, in the position I was in; I started to back out and I thought I was clear of the racks and I raised my head up against the rack."

722

The plaintiff in his brief, attempts to establish other acts or omissions constituting negligence which would, admittedly, have a direct causal relationship with the accident. First, he alleges that there was no artificial light in the car, and that it was because of this fault of the defendant that he misjudged the distance. But there is absolutely no evidence that any artificial light was needed. The accident occurred during the day, and the car had open doors on each side. The sum total of testimony in this regard was as follows:

"Q. What was the condition of the lighting in the car at the time? A. The light from the doors.

"Q. Was there any lamp light of any sort? A. I didn't see any."

At most this was an *implication* that the lighting was poor. But an implication is not evidence, and it is only from evidence that a jury is permitted to draw an inference.

Next, plaintiff calls our attention to the fact that he was required, by Company regulations, to wear goggles. This testimony is uncontroverted in the record, but nowhere is there any evidence whatever that those goggles interfered with his vision in any way. Again, we have a mere implication. Surely the jury may not infer that poor lighting or a pair of goggles caused plaintiff to misjudge the distance to the doors, if there was no evidence that the lighting was poor or that the goggles impaired his sight. As said by the Supreme Court: "Petitioner was required to present *probative facts* from which the negligence and the causal relation could reasonably be inferred." Myers v. Reading Co., 1947, 331 U.S. 477, 485, 67 S.Ct. 1334, 1339, 91 L.Ed. 1615 (emphasis supplied).

We conclude that as a matter of law the negligence of the defendant in sending plaintiff into the car, knowing of his knee injury, did not cause the accident, and that there is no evidence in the case from which a jury could infer that the defendant was guilty of any other negligence.

For the reasons stated the judgment of the District Court will be reversed with directions to enter a judgment for the defendant.