Michele DESSI, Plaintiff,

v.

PENNSYLVANIA RAILROAD COM-
PANY, Defendant.

Civ. A. No. 17993.

United States District Court,
E. D. Pennsylvania,
At Philadelphia.

March 27, 1957.

Charles A. Lord, Philadelphia, Pa. (Richter, Lord & Levy, Philadelphia, Pa., on the brief), for plaintiff.

F. Hastings Griffin, Jr., Philadelphia, Pa. (Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for defendant.

BARKSDALE, District Judge.

This action came on for trial with a jury on November 27, 1956, and when plaintiff had concluded his testimony, and again at the conclusion of all testimony, defendant moved for a directed verdict in its favor, upon the grounds that plaintiff had failed to prove negligence on the part of the defendant and that, even if there was proof of negligence, there was no proof that any negligence on the part of the defendant was a proximate cause of plaintiff's injury. These motions being overruled and exceptions being taken to the court's ruling, the issues were submitted to the jury, which returned a verdict in favor of the plaintiff and judgment was entered thereon. The case is now before the court upon defendant's timely motions, for a new trial, and that the jury's verdict and judgment entered thereon be set aside and that judgment be rendered in favor of the defendant notwithstanding the jury's verdict.

This action, brought under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., grew out of an injury sustained by plaintiff on November 25, 1953, on the yard of defendant's car repair shops at Altoona, Pennsylvania. At that time, plaintiff was, and had been

for many years, employed by defendant in these shops. At that time, he was a mechanic engaged in repairing cars and had a helper. On the Altoona yard, besides the large car shop, there were at least five tracks on which car repair work was done, and also a storehouse track, and a paint track, the primary purpose of which was for the location of cars for painting. On this particular morning, shortly after 8:00 o'clock, plaintiff was directed by his gang foreman to go with his helper to the paint track and replace a wedge in a journal box of a freight car located on the paint track. To replace wedges, it is necessary to jack up a corner of the car a matter of inches so as to take the weight off the wedge in place at the top of the journal box. The metal wedge is slightly less than one inch in thickness. This empty car weighed from 26 to 28 tons and was coupled at each end to other empty cars. Plaintiff used the 15-ton jack, which had been assigned for his exclusive use for several years and which admittedly had been working perfectly up until that morning. Plaintiff and his helper placed the jack on a wooden block on the ground and jacked up the corner of the car a sufficient distance to permit the replacement of the wedge. Plaintiff then said to his helper, "Okay. Push that wedge in and don't let it fall down on the ground." Almost immediately thereafter, plaintiff fell to the ground, momentarily unconscious, with a contusion to the left rear of his head. Neither plaintiff, nor his helper, nor his gang foreman, saw or knew what struck the plaintiff. In a statement given by plaintiff to his foreman at 12:45 P. M., that day, he stated that at the time of the injury,

"I am positive that the jack handle was out of the jack."

When asked to give his idea of what occurred to cause his injury he stated,

"The only thing that I can think of is that I probably struck my head on the bolster jacking post on the South side of this c–27 car."

In the trial of the case, the gang foreman and the helper testified that they did not see anything strike plaintiff and did not see him fall. They heard nothing and the jack was still in place after the accident. However, plaintiff testified at the trial that he believed he was trying to get the handle out of the jack and was knocked unconscious.

It is impossible to tell from the complaint what negligence plaintiff relied on. All but the last two paragraphs of the complaint seems to be a form, broad and general enough to be used in any FELA case, with the names and residences of the parties and the amount sued for filled in, with the general allegation that the accident was caused solely and exclusively by the negligence of the defendant. The only allegation of the complaint pertaining specifically to this accident is as follows:

"12. On or about November 25, 1953, at or about 8:45 A. M., and for a long time prior thereto, the plaintiff was employed by the defendant as a car repairman at its westbound Repair Shop of the Altoona Yards, in Altoona, Pennsylvania, on which date while engaged in repairing a car with a jack, a jack handle did fly out and strike the plaintiff, as a result of which plaintiff suffered severe, painful and permanent injuries more particularly hereinafter set forth."

At the conclusion of the evidence, I was of the opinion that there was sufficient proof of negligence to go to the jury, so charged the jury that it was the duty of the defendant to exercise reasonable care to provide plaintiff with a safe place to work, and that plaintiff had introduced evidence tending to prove certain breaches of this duty, namely,

"That the paint track was an unsafe location upon which to jack up that portion of the box car which he was supposed to jack up. Of course the Defendant was charged with notice of this fact.

"That he was required to do the jacking up while the car he was jacking up was coupled to other cars;

"That the jack he was using was not large enough for this job, and that two or possibly three jacks should have been used instead of one."

To establish negligence, plaintiff called two witnesses. At the time of the injury, one of them was Divisional Chairman of the plaintiff's Union, and the other one was Shop Committeeman. Both had had years of experience in the car repair shops and testified as experts, neither of them having any firsthand knowledge of this particular accident. Defendant's evidence negatived negligence in any of these particulars.

Although I am still of the opinion that plaintiff's evidence of negligence was probably sufficient to go to the jury, upon careful consideration I am satisfied that there is absolutely no evidence to show that plaintiff's injury resulted in whole or in part from any negligence of the defendant.

Plaintiff requested a charge predicated upon a finding "that the jack which the plaintiff was using was unreasonably dangerous under the circumstances," which I refused. Although there were some suggestions by plaintiff's witnesses that some parts of the jack were slightly worn, there was no evidence upon which the jury might have found that the jack was defective. There was no direct evidence that it was defective. Plaintiff testified that right up to the day of this accident he had used this jack regularly and it had always worked properly. After the accident, it was promptly and thoroughly examined by the defendant and found to be in perfectly good working condition. Besides, this jack had been exclusively the plaintiff's jack for a long time, only he used it, and he did not want anybody else to fool with it. As he had exclusive custody of this jack, if it had needed repair or replacement, it was solely his duty to attend to this.

As to the alleged negligent acts of the defendant, included in my charge, it must be conceded that the ground along which the paint track ran was not as firm as the ground on which other tracks were laid. Sand from sand-blasting operations had accumulated along this track, heavy repair work was never undertaken on this track, and only infrequently was light work, such as the replacement of wedges, done there. However, replacement of wedges is a relatively simple operation, and is normally done wherever such replacement is found to be necessary. On this particular occasion, plaintiff and his helper placed a wooden block on the ground, and upon it they placed the jack. By the plaintiff's own testimony, it appeared that, in raising the corner of the car the few inches necessary, the jack did not sink into the ground, the jacking operation was accomplished without difficulty, sufficient clearance was obtained for the wedge to fall out on the ground, and while the helper was in the act of picking it up, the accident occurred. Immediately after the accident, the jack was still in place and still holding the car up. On plaintiff's own testimony, it is inconceivable that the fact that this operation was accomplished on the paint track had any causal connection with the accident, and it is noteworthy that, although a statement was taken from plaintiff the day of the accident and his deposition was taken before trial, neither he nor his counsel ever suggested that the performance of the jacking up operation on the paint track had anything to do with the accident.

As to defendant's alleged negligence in permitting the wedge replacement to be undertaken with a jack which was not large enough, that it should not have been undertaken while the cars were coupled, and that two or three jacks should have been used instead of one, it seems perfectly clear to me that, taking plaintiff's evidence in its most favorable light, none of these things had any causal connection with the accident. The

jack used was a 15-ton jack and the car weighed from 26 to 28 tons. However, it is perfectly obvious that the jack was not being used to lift the entire weight of the car. It was only necessary to lift one corner of the car a matter of inches. Although there is some incredible testimony to the contrary, the only credible evidence as to the weight being lifted is that it amounted to not more than five to six thousand pounds. Certainly it seems elementary that the weight lifted could not have exceeded one fourth of the weight of the car. But in addition, there is the uncontrovertible fact that the jack did do the lifting without difficulty, and that it continued in place, holding up the corner of the car, after the accident had occurred.

As to the car being coupled to other cars, one of plaintiff's witnesses testified that, while a car coupling is rigid horizontally, vertically it will move up or down freely except for the matter of friction. The only expert evidence as to this is that such friction could not add more than 1,000 pounds to the lift.

■ It is my conclusion that, at the very least, defendant is entitled to a new trial. Even though it be conceded that the evidence of plaintiff, taken in the light most favorable to him, was sufficient to prevent a directed verdict, it is nevertheless the duty of the trial court to set aside the verdict if of opinion that the verdict is against the clear weight of the evidence or will result in a miscarriage of justice. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F. 2d 350. I am satisfied that both these conditions prevail. The clear weight of the evidence in this case is not only against the plaintiff's contentions of negligence, but negatives causal connection, and I am satisfied that it would be a miscarriage of justice to permit plaintiff to recover damages against the defendant on the evidence here presented.

■ And I feel no doubt that the verdict should be set aside and a new trial be awarded for my failure to properly explain the law of proximate cause to the jury. In this case, the matter of proximate cause was of paramount importance. I believe that that part of my charge dealing with proximate cause was correct, but particularly in this case, where the legal concept of proximate cause was so important, I should have intelligibly explained to the jury what the legal phrase meant. My failure to do so, in my opinion, undoubtedly constituted error, for which a new trial should be awarded. Brumberger v. Burke, 3 Cir., 56 F.2d 54, Fair v. Floyd, 3 Cir., 75 F.2d 920, and Adams v. United States, 7 Cir., 116 F.2d 199.

■ Not only am I satisfied that the situation here presented requires that, at the least, the verdict and judgment should be set aside and a new trial awarded, but a careful consideration leads me to the conclusion that there should be a judgment for the defendant notwithstanding the jury's verdict, by reason of the total lack of evidence to show any causal connection between defendant's alleged negligence and the plaintiff's injury. Cases arising under the FELA are legion, and it would serve no useful purpose to undertake to discuss all of them. I am well aware of the fact that many cases have held generally that the questions of negligence and proximate cause are jury questions. Tiller v. Atlantic Coast Line, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73. Also, I have read and considered the cases of Rogers v. Missouri-Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515; Webb v. Illinois Central R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503; 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515; Herdman v. Pennsylvania Railroad Co., 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508; 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515; and Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed. 2d 511; 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed. 515, appearing in the February 26,

1957, issue of the United States Law Week, and not yet officially reported. But all these cases are predicated on some proof of negligence and causal connection.

Judge Soper's comment in Atlantic Coast Line R. Co. v. Collins, 4 Cir., 235 F.2d 805, 807, certiorari denied 352 U.S. 942, 77 S.Ct. 265, 1 L.Ed.2d 238, seems most pertinent to this case:

"In the last analysis the plaintiff's case rests upon the contention that negligence on the part of the railroad company must be inferred from the mere happening of the incident. He says in effect, that since it was so hard to lift the lever of the switch to the upright position that he hurt his back, the switch mechanism must have been defective, and the railroad company was negligent in furnishing it. But this simple statement leaves out of account other material features of the evidence on his behalf which must be taken into consideration. He also showed that the switch was operated many times each day, that he himself had operated it a dozen times on the night that he was hurt; and that neither he nor his companion, who had operated it on previous occasions and found it harder to use than some other switches, had ever complained of its condition to their superiors. This testimony taken in the light most favorable to the plaintiff may give rise to the speculation whether the injury was due to a defective switch of the railroad company or to the defective back of the man; but speculation is not enough. ' "The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." ' Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 32, 64 S.Ct. 409, 411, 88 L.Ed. 520.".

See also Brady v. Southern Pacific Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239, and Gill v. Pennsylvania Railroad Co., 3 Cir., 201 F.2d 718, certiorari denied 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343.

In the Gill case, Judge Kalodner, speaking for the court, said, 201 F.2d at pages 720–721:

"We have reviewed all of those cases, and in certain respects the law enunciated therein by the Supreme Court is a modification of common-law principles. Generally, the Supreme Court has shown a disposition to allow cases to go to the jury where, at common law, a verdict would have been directed for the defendant. But there are limitations. 'The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be "in whole or in part" the cause of the injury.' Ellis v. Union Pacific Railroad Co., 1947, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572. Tennant v. Peoria & Pekin Union Railway Co., 1944, 321 U.S. 29, 32, 64 S. Ct. 409, 88 L.Ed. 520; Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Reynolds v. Atlantic Coast Line, 1949, 336 U.S. 207, 69 S.Ct. 507, 93 L.Ed. 618; Lillie v. Thompson, 1947, 332 U.S. 459, 68 S. Ct. 140, 92 L.Ed. 73. As was said in Brady v. Southern Railway Co., 1943, 320 U.S. 476, 479, 480, 484, 64 S.Ct. 232, 234, 88 L.Ed. 239:

" 'The weight of the evidence under the * * * Act must be more than a scintilla before the case may be properly left to the discretion of * * * the jury. When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise * *. The rule as to when a directed verdict is proper * * * is applicable to questions of proximate cause.' "

It therefore follows from the foregoing that an order will be entered setting aside the verdict of the jury and the judgment entered thereon, and rendering judgment for the defendant.