321 So.2d 664

**SEABOARD COAST LINE RAILROAD COMPANY, a corporation**

v.

**Jerome McDANIEL.**

**Civ. 422.**

Court of Civil Appeals of Alabama.

July 30, 1975.

Rehearing Denied Sept. 10, 1975.

**324**

Cabaniss, Johnston, Gardner, Dumas & O'Neal and John J. McMahon, Jr., Birmingham, for appellant.

Rives, Peterson, Pettus, Conway & Burge, and W. Eugene Rutledge, Birmingham, for appellee.

WRIGHT, Presiding Judge.

A jury awarded damages to plaintiff in an action brought in circuit court under the Federal Employers' Liability Act.

At the completion of the evidence, the defendant moved for a directed verdict. The motion was denied. Verdict was returned for plaintiff in the amount of $8,000.00. Defendant's motion for judgment notwithstanding the verdict was denied. Defendant appeals. We reverse.

On September 7, 1972, plaintiff had been employed in the Signal Maintenance Department of defendant for over 20 years. He was regularly employed five days a week as assistant signal maintainer from 8:00 A.M. to 5:00 P.M. but on September 7, 1972 was acting signal maintainer due to the absence of his superior on vacation. Plaintiff was subject to call for overtime in event of need. His main place of work was in the classification yard near Rockingham, North Carolina. His job was to maintain and repair the switches and signals on the railroad of defendant. The classification yard was the place where trains from several states were brought,

broken down according to ultimate destination and reassembled into other trains for further movement.

At approximately 5:15 A.M. on September 7, plaintiff received a call at home that his services were needed. He arrived at the yard at approximately 5:35 A.M. After receiving information as to the site of the trouble, plaintiff drove the truck with equipment and tools provided by defendant for use in his employment to the close proximity of the 180 switch. The 180 switch is the main switch which works automatically to disperse the cars "humped" to it onto the proper track in the yard. There are some 80 tracks in the yard.

At about 6:00 A.M., plaintiff arrived at the 180 switch. There he found the supervisor of the switching operation who inquired how long it would take to repair the trouble. Plaintiff, after looking at the switch, informed him it would take only two or three minutes. With this information, the supervisor of operations walked away. Plaintiff was alone on the job. Plaintiff determined the trouble to be that an operating arm on the switch had been bent into and against a cross-tie, causing the switch to become inoperable. He determined from his experience and judgment that the arm or rod merely needed straightening to become operable again.

Plaintiff took from his truck an instrument called a "digging bar". This was a straight round steel bar or rod, some five feet in length with an "edged off point". The truck carried two such bars which were used by plaintiff in "prizing" off old brake shoes.

Plaintiff inserted the end of the bar in a small space between the bent switch rod and the cross-tie and began to pry down in an effort to remove the bend in the rod. In the process of prying, the bar slipped in his hand. Plaintiff, in describing the event, used the following language:

"Q And what happened when you got the bar and brought it back over there?

"A I proceeded to stick the bar down between the cross tie and circuit controller rod. And I was pulling down hard on it, and pulled it away from the cross tie.

"Q And what happened?

"A It just slipped. I didn't fall all the way down; it just slipped in my hand. In other words, I don't know whether it rolled on the circuit controller, itself, or whether it slipped off from the cross tie, or I had a deep enough bite or not. But anyway, when I went down, it just slipped in my hand. I didn't fall all the way down."

As a result of the slipping, a small metacarpal bone was broken in the back of plaintiff's hand. He completed repair of the switch, unaware of the severity of his injury until it began to interfere with his work several hours later.

Plaintiff in his complaint charged that his injury was caused by the negligence of defendant in one or more of three different respects. First, that defendant was negligent in not furnishing him with proper equipment; second, by not providing proper light; and third, in failing to provide proper assistance to perform his work.

Defendant contends that the evidence fails to establish negligence in any respect.

█ It is well known that actions brought under the Federal Employers' Liability Act, U.S.C. Title 45, § 51 et seq. are governed by decisions of the federal courts though tried in state courts. *Louisville & N. R. R. v. Cooke*, 267 Ala. 424, 103 So.2d 791; *Ellis v. Union Pacific R. R.*, 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572.

█ We therefore must look to interpretation of the Act by the federal courts. Those decisions clearly state that the Act makes an employer liable if an injury results only in part from his negligence. The common-law standard of proximate

cause is modified, and the employee has a less demanding burden of proving causal relationship. *Nivens v. St. Louis Southwestern Ry.,* 5 Cir., 425 F.2d 114. The employee's contributory negligence does not bar recovery if the employer's negligence contributed in any way to the injury. However, the plaintiff still has the burden of proving a hazardous condition, and that the employer, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury. Foreseeability is "an essential ingredient" of negligence under the Act. *Gallick v. Baltimore & O. R. R.,* 372 U.S. 108, 83 S. Ct. 659, 9 L.Ed.2d 618 (1963). But actual notice of an unsafe condition is unnecessary. Constructive notice may suffice. *Security Ins. Co. v. Johnson,* 10 Cir., 276 F.2d 182. "In short, the principles that the employer is not an insurer of its employee's safety, and that negligence is not presumed merely by proving an injury, are still viable.' Employer negligence is still mandatory for recovery under the Act." *Nivens v. St. Louis Southwestern Ry., supra.*

Such statements as that just quoted, however, must be viewed in light of the following:

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does, not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. . . .

> "The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fairminded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." *Rogers v. Missouri Pacific R. R.,* 352 U.S. 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493.

■ With such statement of the law to be applied, it is difficult to accept the admonition in such cases that the Act does not intend the employer to be an insurer, as espoused by Mr. Justice Douglas in his concurring opinion in *Wilkerson v. McCarthy,* 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. However, in considering the evidence adduced by the plaintiff in F.E.L.A. cases, the general definition of negligence is still to be applied. That is, "the lack of due care under the circumstances, or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation." *Tiller v. Atlantic Coast Line R. R.,* 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610.

As we see it, the question before this court is whether there were any probative facts adduced by plaintiff from which, when considered with reason, the jury could conclude that the defendant failed to do what a reasonable and prudent person would have done under the existing circumstances. Further, whether any act or failure to act by defendant contributed even slightly to the injury of plaintiff.

As stated heretofore, plaintiff's theory for recovery was that defendant was negligent in one or more of three forms, i. e., (a) he was not furnished a proper tool; (b) he was not given sufficient help; (c) he was not furnished light to work by.

■ The latter two contentions would appear to be somewhat overlapping. We have examined the evidence minutely,

searching for some facts which justify with reason the conclusion that defendant was negligent in failing to furnish a helper, either to perform the physical act of prying the bent connecting rod away from the cross-tie or to hold a light while plaintiff worked.

There is no testimony by plaintiff that he either had a light or that one was needed for aid in performing the job. There is no evidence as to the condition of visibility at the scene. The evidence was that plaintiff arrived at the yard between 5:35 and 6:00 A.M. He subsequently drove to the site of the trouble, examined it, talked briefly with the yard superintendent, took his tool from the truck and began. The time of the accident is not stated in the testimony. The date was September 7. Whether it was daylight or not on that date, at that time, is not shown. Plaintiff stated that he looked at the switch and determined the problem. There is no indication that light was needed either for observing or working.

The testimony of plaintiff was that he determined the job of repair was a simple one and that he would not have called for additional help for "it was not that big a job." He examined the bent rod and determined that with the equipment he had on his truck he could repair it in two or three minutes. He so advised the yard supervisor who inquired of him.

We find no evidence that supplies even an inference that failure by the railroad to furnish other employees to assist plaintiff contributed in the slightest to the injury.

Plaintiff was in charge of performing the work and in his own words he used his best judgment gained from some 20 years in the job in determining what to do and how to do it. Plaintiff argues that the pressure of the need for immediate and quick action affected the action he took. Though the switch involved was the main switch in the yard and its breakdown obviously affected the operation of the yard, there is no evidence that any pressure was applied by defendant to proceed with the repair without proper help or equipment. Plaintiff states that the job was simple and was within his capability to perform quickly.

The charge of negligence in failing to provide the proper tool is, in our opinion, equally unsupported by the evidence. Plaintiff stated that in the 20 years he had been an assistant signal maintainer, he had never seen a switch connector rod bent in such a fashion as on the occasion of his injury. There had never, in his experience, been an occasion for prying such a rod away from a cross-tie. The tool which he chose from his truck to perform the repair was one which he often used to pry off old brake shoes at the master retarder. It was a tool with which he was thoroughly familiar. It can only be inferred that he chose it because he considered from his knowledge and experience that it would serve the need. There was clearly no inherent danger in the use of the tool. The evidence is not that the tool was improper or incapable of performing the job if properly used. It did perform the job, in fact. Plaintiff completed the job after he suffered his injury.

We have said that the plaintiff has the burden of proving negligence; i. e., that defendant, with the exercise of due care, could have reasonably foreseen that failure to provide plaintiff with a different tool could cause injury. "Foreseeability is an essential ingredient of negligence under the Act." *Gallick v. Baltimore & O. R. R., supra.* The evidence does not justify, with reason, the conclusion that the defendant was negligent.

Plaintiff attempted to produce testimony that another tool, a "spike puller", might "possibly" have been better to use. However, he would only say "possibly." He stated he could have probably prized with the toes of the spike puller like a claw hammer instead of the way he did with the straight bar. However, a "spike puller" is not a tool constructed for signal maintaining. It is, according to the testimony, a tool made for use in construction and re-

pair of the rails and road bed. There is no evidence that plaintiff had ever had occasion to use such a tool as a signal maintainer or that it had ever been used for signal maintaining. It was described as a long crowbar-type tool with a flattened foot split into two prongs for placing under the head of a spike and pulling it from the cross-tie. It is a tool designed for a specific purpose other than signal maintenance.

Plaintiff, who had never needed or found a use for such a tool in his 20 years as a signal maintainer, now submits that it was a better tool than the bar provided him and that the defendant was negligent in not foreseeing that such a tool would be needed by him on this occasion.

We have heretofore set out the description of plaintiff of how his injury occurred. We requote in part what he said:

> "It just slipped, I didn't fall all the way down; it just slipped in my hand. In other words, I don't know whether it rolled on the circuit controller, itself, or whether it slipped off from the cross-tie, or I had a deep enough bite or not. But, anyway, when I went down, it just slipped in my hand. I didn't fall all the way down."

■■ If the defendant is to be charged with foreseeability from the evidence in this case, it would be equally guilty of negligence in failing to provide a unique and unusual tool in any instance of its employee facing a situation never before experienced by him. The criteria is reasonably foreseeable. Reasonable foreseeability must arise from the knowledge of the ordinary needs of the particular job and past experience of the situations presented. In 20 years plaintiff had never encountered the unique situation presented on this occasion. There is a complete lack of evidence that the performance of regular duties of a signal maintainer had ever needed or required the use of a "spike puller". Even if we accept the "possibility" that it might have been a better tool to use in this par-

ticular instance, we cannot, with reason, from the evidence, accept the charge that its use was reasonably foreseeable and the defendant negligent for failing to place it on the truck used by plaintiff.

We are impressed from the many cases we have read applying the Act, that the primary departure therein from common-law tort liability is in the area of causation. Proof of negligence by the defendant remains necessary. The common-law definition of negligence remains the same. It is the change from direct or proximate cause to that of slightest contributing cause that marks the main departure. Another departure is removal of common-law defenses except the general issue. Any further departure could only result in making the employer an insurer for any injury incurred in the course of employment.

We think the court expressed our impression correctly in *Rogers v. Missouri Pacific R. R., supra,* when it said:

> "The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages, arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference."

We hold that plaintiff failed to present evidence of negligence. We find this to be one of "the infrequent cases where fair minded jurors cannot honestly differ whether fault of the employer played any

part in the employee's injury." *Rogers v. Missouri Pacific Railroad Co., supra.*

Reversed and remanded.

BRADLEY and HOLMES, JJ., concur.