953 F.2d 1391
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Edward L. JOHNSON, Plaintiff-Appellant,
v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Delaware
Corporation, Defendant-Appellee.
 No. 91-3027.
 United States Court of Appeals, Tenth Circuit.
 Jan. 28, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Edward L. Johnson appeals from a district court judgment dismissing his action against Defendant-appellee Atchison, Topeka and Santa Fe Railway Company for damages under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51. Plaintiff alleged that he sustained injuries while performing duties as an employee of Defendant due to Defendant's negligence. The jury found that Defendant was not negligent. On appeal, Plaintiff contends that the verdict was so contrary to the evidence as to require a new trial. We disagree and affirm.
 
 
 3
 Plaintiff was employed by Defendant at its Topeka, Kansas, office as a messenger and mail distributor. On August 21, 1986, Plaintiff arrived at work at 7:00 a.m. He made a few trips through the hallway that connects the computer office building with the general office building and noticed George Pennington, another employee of Defendant, operating a carpet cleaning machine on the carpet adjacent to the tile floor. Plaintiff asked Pennington if the carpet was wet because Plaintiff was concerned whether he, Plaintiff, could take his cart across the tile floor. Pennington said the carpet was wet. Plaintiff intended to make a subsequent trip through the hallway between 11:15 and 11:30 a.m. and asked Pennington again whether the floor was still wet. Pennington said the floor was still "kind of damp." Plaintiff did not make the trip.
 
 
 4
 Plaintiff took a thirty-minute lunch break. He returned to work between 1:30 and 2:00 p.m. He made several stops before proceeding back through the glass doors to the general office building. At that time, Plaintiff realized he had forgotten to pick up something, left the cart, and went back through the carpeted area. As he stepped through the glass doors off the carpet, his right foot stretched out in front of him almost as far as it would go. He tensed up and caught himself but did not fall to the floor. He felt a slight pull on the back of his leg. He noticed moisture on the tile floor where one steps onto the tile, immediately after the carpet.
 
 
 5
 Pennington testified that during the morning of August 21, 1986, he shampooed the carpet in the area in which Plaintiff was injured. Pennington used a machine that would lay down water, scrub the floor, then pick up the water. Before shampooing the carpet, Pennington put up "wet floor" signs. Pennington's supervisor told Pennington to keep the signs up until he, Pennington, felt the floor was dry. Pennington informed Plaintiff that the floor was damp.
 
 
 6
 When Pennington left the area around 11:30 or 11:45 a.m., he removed the "wet floor" signs because he felt the floor was safe enough to walk on. Pennington testified at trial that to the best of his knowledge he had done everything he reasonably could do to make sure that the carpet and tile area was dry and safe for people to walk on. Pennington touched the carpet before he left the area and the carpet felt dry. However, he acknowledged giving a pretrial statement in which he stated that the floor was still damp when he left. Pennington testified that he would expect the carpet to be completely dry within an hour after using the machine he used. In the past, Pennington observed that moisture got on the tile floor as a result of people walking across the wet carpet and carrying water onto the tile.
 
 
 7
 Plaintiff argues that the only reasonable conclusion that can be reached is that Defendant was negligent in allowing water to remain on the floor, and the issue was therefore to be decided by the court as a matter of law. See Baker v. Texas & Pac. Ry., 359 U.S. 227, 228 (1959) (only if reasonable men could not reach differing conclusions on an issue may the question be taken from the jury). We disagree.
 
 
 8
 The FELA makes every "common carrier by railroad while engaging in commerce ... liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. § 51. The FELA does not make an employer the insurer of its employees' safety. Rather, the basis of liability under the FELA is negligence, not that an injury occurred. Ellis v. Union Pac. R.R., 329 U.S. 649, 653 (1947). Under the FELA, a railroad has a duty to use reasonable care in furnishing its employees with a safe place to work. Atchison, T. & S.F. Ry. v. Buell, 480 U.S. 557, 558 (1987). The test of negligence under the FELA is "whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances." Wilkerson v. McCarthy, 336 U.S. 53, 61 (1949). A plaintiff in an FELA action has the burden of proving the employer was negligent and the negligence was the proximate cause of an injury. Tennant v. Peoria & P.U. Ry., 321 U.S. 29, 32 (1944).
 
 
 9
 A jury verdict may be upset "[o]nly when there is a complete absence of probative facts to support the conclusion reached." Lavender v. Kurn, 327 U.S. 645, 653 (1946). Pennington testified that he did everything he reasonably could do to make sure the floor was dry and safe for people to walk on, and that he believed the floor was dry when he left the area. This testimony supports a finding that the Defendant did everything it reasonably could have done to maintain a safe workplace. While there is evidence to the contrary, "where ... there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." Id. We conclude the evidence is sufficient to sustain the verdict.
 
 
 10
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3